MICHAEL MATTHEWS *vs.* INHABITANTS OF WESTBOROUGH.

Worcester.    Oct. 4, 5, 1882. — April 3, 1883.    C. ALLEN, COLBURN &
HOLMES, JJ., absent.

In an action by A. against a town to recover a sum voted by the town to him as
compensation for injuries received by him while in the employ of the town,
the plaintiff put in evidence the records of the town, from which it appeared
that, at a regular town meeting, under an article in the warrant to see if the
town would grant aid to A. for injuries received while in the employ of the town,
the matter was referred to the selectmen to inquire into the facts and report
to the town what they considered would be a fair compensation to A. for his
injuries, in addition to what he has already received from the town; that, at
a subsequent town meeting, the selectmen reported the facts of the plaintiff's
injuries, and that "the town would do well" to pay him a sum named by them;
and that, when the report came up for consideration, it was amended by insert-
ing a larger sum instead of that named, and, as amended, it was adopted.    The
judge instructed the jury, among other things, that the validity of the town's
action depended upon whether the money was voted as a gratuity, or was voted
as a settlement of a claim against the town, which had been made or might
reasonably be expected to be made, founded upon an alleged legal liability;
that if there was no legal liability, but the plaintiff made a claim under such
circumstances as to indicate that it was not a mere pretence, but was a real
claim founded upon an alleged legal liability, and that claim was made known
to the committee, and their report was made in reference to it, the vote was
valid; that if the town was legally liable, and no claim was made of any legal
liability, and upon the facts of the case no such claim could reasonably be ex-
pected to be made, and the plaintiff asked aid because he was poor and deserving
of favor, the money was voted as a gratuity, and the town was not liable.    *Held,*
that the vote of the town was so far equivocal that parol evidence was admissi-
ble in its interpretation.    *Held, also,* that the plaintiff had no ground of ex-
ception to the instructions given.

In an action against a town to recover a sum voted by the town to the plaintiff
as compensation for injuries received by him while in the employ of the town,
evidence of a conversation between the plaintiff and his attending physician,
in which the plaintiff asserted that he had a legal claim against the town, and
the physician expressed to him his opinion that he had such a claim, is inad-
missible.

CONTRACT to recover $500, alleged to have been voted to the
plaintiff by the defendant town.    After the former decision,
reported 131 Mass. 521, the case was tried in the Superior
Court, before *Knowlton,* J., who allowed a bill of exceptions,
in substance as follows:

The plaintiff testified that he was employed in 1877 by the
defendant town, under the direction of the highway surveyor,
who was a duly elected officer of the town, in the excavation

of a gravel bank for the purpose of obtaining gravel for the repair of the highways of the town; that, while so engaged, the bank caved in, and a large amount of earth and stone fell upon him and injured him; that the place was dangerous; that he knew that such a place was dangerous to work in when he went to work for the town; that he had worked several years digging in gravel banks; that in December 1877, after the accident, he saw the selectmen, and made claim upon the town, and asked for aid or compensation for his injuries, and said he was a poor man and that he had a claim against the town; that Dr. Curtis, one of the selectmen, told him that the selectmen could do nothing for him; that he asked them to put an article in the warrant for the next town meeting, and the selectmen agreed to put an article in the warrant for the annual town meeting, to bring the matter before the town; that when the selectmen met as a committee, under the vote hereinafter mentioned referring the matter to them, he met them by appointment, and they asked how he was situated as to property, and said nothing about his claim, except to ask him if he thought the town was liable, to which he replied that he did; that he did not know what they were going to report, and did not state the amount of his claim to them; that Dr. Curtis, one of the selectmen, had helped set his leg and had attended him afterward with Dr. Harvey, who was his attending physician; that he was at both town meetings at which the matter was voted on; that after the April town meeting he went to the selectmen, and they would not pay him, and said some one objected; and that he, at this and other interviews, accepted the action of the town, and offered to take the amount voted in satisfaction of his injuries.

It was admitted that the meetings of the town at which action was taken relative to the plaintiff were duly warned and legally held.

The plaintiff also introduced the following evidence: The warrant for the town meeting held March 4, 1878, contained the following article: "To see if the town will grant aid to Michael Matthews for injuries received while in the employ of the town." On this it was voted "that the subject matter of this article be referred to the selectmen, with instructions to inquire into the facts and report to the town what they consider

would be a fair compensation to Mr. Matthews for his injuries, in addition to what he has already received from the town." The selectmen took the matter into consideration, and at a town meeting held April 15, 1878, made the following report: "The selectmen having been chosen a committee at the annual March meeting to examine into and report upon the case of Michael Matthews, submit the following: We find upon examination that Michael Matthews while in the employment of the town upon the public highway, in June 1877, was injured by the falling of an earth embankment; the main and only injury received was a fracture of the thigh-bone near the joint, in consequence of which he has been subjected to much pain and expense, together with a loss of time, nearly nine months. In view of the above statement we are of the opinion that the town would do well to pay said Matthews $144 in addition to $56 already paid him, making in all $200, and so recommend." The report coming up for consideration at said town meeting, the report was amended by inserting the sum of $500 instead of $200, and as amended the report was adopted.

The plaintiff testified that two or three persons spoke at the town meeting.

The plaintiff objected to the introduction of any parol evidence by the defendant, contending that its liability was absolute under the votes; but the judge ruled that said report and votes were so far equivocal as to admit of parol evidence to aid in the interpretation of them, and permitted the defendant to introduce the following evidence, against the plaintiff's objection:

H. W. Weld testified that he was surveyor of highways in the defendant town, in 1877; that he cautioned the plaintiff the day before the accident not to dig under the bank so as to incur risk of its coming down; that he cautioned the plaintiff several times before about digging under such banks, and cited as an instance a different bank from that where the accident happened, but similar to it and composed of similar material; that he paid Mathews $56, by direction of the selectmen, as the other workmen were paid, and kept his name on the list of workmen for six weeks, when his gang ceased work.

Moses Bombat testified that he was at work with the plaintiff at the time of the accident; that he told the plaintiff the day

before and on the morning of the accident that he was picking under the bank too far; and that at the time of the accident the plaintiff was engaged in picking under the bank.

W. R. Gould testified that he was one of the selectmen in 1877; that the plaintiff came to him as such, and said he thought the town ought to do something to aid him in his expenses and sickness; that he had been a resident of the town for many years, and had paid taxes; that he told the plaintiff " we had already given him $56 without any authority; " that he claimed that as a reason why the town should do more; that at the meeting of the selectmen before the March meeting the plaintiff came before them and made a request, similar to that which he had made before, that the town should assist him; that " we told him that we had no authority, but would put it in the warrant and let the town do as they saw fit; " that, after the March meeting, the selectmen met him and questioned him about his circumstances; thought they told him they would make it up to $200; that he never asked for compensation, and never said he had a claim on the town; that he was at the town meeting in April, and one Bowes made a motion to raise the amount; that no one else made any remarks; that Bowes, in supporting his motion, said that the plaintiff was a respectable man, a good citizen, and it was easier for the town to pay than for him to get along without it. On cross-examination, the witness testified that he knew that the town could not legally vote a gratuity.

Dr. Curtis testified to the same effect as Gould; and further testified that the plaintiff, in his conversations with the selectmen prior to the March town meeting, said that it was a dangerous place where the town put him to work; that, both prior to and after the town meeting, he instanced the case of a man in Worcester who had recovered of the city for injuries resulting from the caving in of a sewer, and he thought his case was like that; that Bowes, at the April meeting, thought the selectmen had not reported enough for the injuries which the plaintiff suffered.

Reuben Boynton testified that Bowes in the town meeting said the selectmen had not reported enough for what the plaintiff was injured.

The selectmen were the only persons to whom the plaintiff made application as agents or representatives of the town.

This was all the evidence in the case, except certain other testimony tending to show that all his applications to the selectmen for money from the town were made as for a gratuity, and not for compensation.

The plaintiff called as a witness the physician who attended him in his illness, who testified that, upon two occasions, one during the plaintiff's confinement to his bed and one a few days before the March meeting, he had a conversation with the plaintiff, and offered to show that, in the course of these conversations, the plaintiff contended that he had a legal claim against the town, and that the witness expressed to him his opinion that he had such a claim. This evidence was excluded by the judge, and the plaintiff excepted.

At the close of the evidence, the plaintiff asked the judge to direct a verdict for the plaintiff, on the ground that there was no evidence sufficient to warrant the jury in finding that the vote of the defendant town was illegal. The judge refused so to do; and, among other things not excepted to, instructed the jury, in substance, as follows:

" The material question for you to decide in this case is as to the validity of the vote of the town. The right of towns to appropriate by vote the money of their inhabitants is created and defined by statute. A town cannot lawfully vote money to be given in charity, but it can lawfully and properly provide by vote for the payment of its debts and for the settlement of claims against it. [In this case, the validity of the town's action depends upon whether the money was voted to the plaintiff as a gratuity, on account of the misfortune which had come upon him in the service of the town, and because he was thought worthy and deserving of favor, or was voted as a settlement of a claim against the town, which had been made or might reasonably be expected to be made, founded upon an alleged legal liability for the accident which happened to the plaintiff.] If it was voted as a gratuity, the town is not liable. If it was voted as a settlement of such a claim, the town is liable. This involves the determination of what was the intent and purpose of the town in passing the vote. This intent is the corporate intent, — the intent and purpose of the town acting as a municipality, — a single corporate being, and not the intent of any particular

person, or of any number of persons who make up the corpora-
tion. This intent can be ascertained only by the language of
the vote. Parol evidence would not be competent to show what
was actually in the mind of any inhabitant of the town who
participated in this vote. In construing the vote, the article in
the warrant bringing the matter before the town, the vote under
it appointing a committee, the report made to the town by this
committee, and the amendment and final adoption of the report
by the town, must all be considered together. What is the true
interpretation and meaning of a vote of a town is not a question
for a jury where no facts are in dispute, but is a question of law
for the court. The language is always to be interpreted with
reference to the subject matter to which it relates, and the cir-
cumstances under which it is used.

"In this case, the facts proper to be considered in the inter-
pretation of the vote are in dispute, and so its true intent and
meaning are to be ascertained by you in the application of it to
the facts as you shall find them. Accordingly, evidence has
been introduced of what the accident was, and how it happened,
and you may consider this evidence with a view to determining
whether the town was legally liable to the plaintiff for the in-
jury which he suffered. The town was not liable for the injury,
unless the accident happened on account of the negligence of
the town while the plaintiff was in the exercise of ordinary care.
In entering into the service of the defendant, he assumed all the
ordinary risks incident to his employment, and all risks of acci-
dents happening through the fault or negligence of his fellow-
workmen. If the danger of working in this bank in the way
he was doing at the time of the accident, or the danger of so
working in other similar banks, was brought to his attention
before the accident, that fact is proper to be considered upon
the question whether he was at the time of the accident in the
exercise of due care. If he knew that what he was doing was
dangerous, and determined to take the risk of it, he was not in
the exercise of such care as would enable him to recover for the
injury.

"You may also consider what occurred at the town meeting
at which the vote was passed, what representations were there
made about the case, and what reasons were there urged by

speakers in support of the motion to adopt the report. These matters will be material and important in helping you to ascertain the meaning of the vote.

"To further aid you I will give you the following rules: 1. If the town was legally liable for the accident, the vote must be deemed to have been intended as a settlement of the claim. 2. If there was no legal liability for the accident, but the plaintiff made a claim under such circumstances as to indicate that it was not a mere pretence, but was a real claim founded upon an alleged legal liability of the town for the accident, and that claim was made known to the committee that made the report, and the report was made with reference to it, the vote must be deemed to have been intended as a settlement of it, and is valid. 3. If the town was not legally liable for the accident to the plaintiff, and no claim was made of any legal liability of the town therefor, and upon the facts of the case no such claim could reasonably be expected to be made, and the plaintiff asked aid because of his misfortune and because he was poor and worthy and deserving of favor, and these latter were the reasons urged in his behalf in the speeches at the meeting at which the vote was passed, the money was voted as a gratuity, and it cannot be collected of the town.

"I do not undertake to lay down rules for every possible view that you may take of the evidence, but from these rules, and from any others that may be properly applicable to the facts as you may find them, you will determine the true meaning and interpretation of the vote. If, in accordance with the principles of law which I have stated, you find the vote valid, your verdict will be for the plaintiff; if you find it was not valid, it will be for the defendant."

The plaintiff excepted to that portion of the charge which is enclosed in brackets, and also to the second and third of the three rules given to the jury for their guidance.

The jury returned a verdict for the defendant; and the plaintiff alleged exceptions.

*F. A. Gaskill*, for the plaintiff.

*W. S. B. Hopkins*, for the defendant.

W. ALLEN, J. The court properly ruled that the vote of the town adopting the report of the selectmen, with an amendment,

was so far equivocal as to admit of parol evidence to aid in its interpretation. *Matthews* v. *Westborough*, 131 Mass. 521.

The plaintiff objects specifically to two matters put in evidence, amongst other things, under this ruling. We do not understand that any ruling was made, or exception taken, except as to the competency of parol evidence to aid in construing the vote. If the plaintiff wished to except to any particular evidence as not falling within this ruling, he should have made objection to it on that ground.

The evidence offered by the plaintiff of a conversation between himself and his physician was properly excluded.

We find no error in the instructions to the jury. It is objected that the court left it to the jury to determine whether the defendant was legally liable to the plaintiff. But this was only under the instruction that, if the town was legally liable, "the vote must be deemed to have been intended as a settlement of the claim." Leaving the question to the jury under such instructions was sufficiently favorable to the plaintiff. It was only in case the jury failed to find that the defendant was legally liable, that any question of the right of the plaintiff to recover could arise.

The jury were instructed, in effect, that, if the money was voted as a gratuity, the plaintiff could not recover; if it was voted as a settlement of a claim,—a claim which had been made, or which might reasonably be expected to be made, — the town would be liable. The plaintiff objects to the second rule given by the court to the jury, that it required the jury to find for the defendant unless a claim had in fact been made by the plaintiff. We do not so understand it. The jury had been instructed sufficiently. This instruction was only that, if certain facts, which the plaintiff claimed to be proved, were true, the vote was valid. It was limited to one aspect of the case presented by the plaintiff, and was favorable to him, and we see no ground on which he can object to it.

If the defendant was not legally liable, and the plaintiff did not contend, and could not reasonably be expected to contend, that it was liable, and if the plaintiff asked for a gratuity, and the vote was advocated in the town meeting as a gratuity, — if all these facts were proved, the vote must be construed as

for a gratuity. This was in substance the instruction in the third rule given to the jury. The plaintiff objects to this, among other reasons, that there may have been other facts consistent with these, which, added to them, would call for a different construction of the vote. Perhaps such facts can be imagined, but none were disclosed in the evidence, and the rule of construction laid down by the court must be applicable to the evidence. It is objected that what was said in town meeting was not competent to construe the vote, and that the instruction is erroneous in including that. The evidence upon this point was only of what was said by the person who made the motion. We are inclined to think that it was competent. But if it is excluded, the other facts fully warrant the instruction. The instruction required that the jury should find all the facts stated in it; and the jury, finding a verdict under this instruction, must have found that there was no legal liability of the town, that the plaintiff made no claim of legal liability, and the facts were such that no claim could reasonably be expected to be made, and that the plaintiff asked for a gratuity. Upon these facts being established, there being no facts in the case to control their effect, it was the duty of the court to construe the vote as for a gratuity. *Exceptions overruled.*