ELISHA WELLS vs. ELMER E. PUTNAM & others.

Franklin.     September 21, 1897. — October 20, 1897.

Present: ALLEN, HOLMES, KNOWLTON, MORTON, & BARKER, JJ.

*Question whether Vote of Town to release Debtor was by way of Gratuity, or because the Claim was unfounded.*

In this case, which was a bill in equity to restrain the defendant from foreclosing a mortgage held by him as trustee for the inhabitants of a town, on the ground that they had voted to release the plaintiff from all liability thereon, the report was discharged, the court saying that it should be first found whether the vote to release was by way of gratuity, or because the claim was regarded as unfounded.

BILL IN EQUITY, filed in the Superior Court, October 26, 1896, to restrain the defendant Putnam from foreclosing a mortgage held by him as trustee for the inhabitants of Deerfield. The inhabitants of Deerfield made no answer, and as to them the bill was taken as confessed.

At the trial, without a jury, before *Bishop*, J., there was evidence tending to show that the plaintiff signed as surety two bonds of one Stebbins as tax collector of the town of Deerfield for the years 1892 and 1893; that during those years and the years 1894 and 1895 Stebbins embezzled taxes collected by him to the amount of about $9,000; that he was indicted therefor, and, upon his plea of guilty, was sentenced; that Stebbins had never paid to the town the money so embezzled; that in May, 1895, two suits were begun by the town of Deerfield upon the bonds of Stebbins as tax collector, and against the plaintiff as one of the sureties on each of the bonds, on account of the breaches of the conditions thereof by reason of said embezzlements; that there were controversies between the plaintiff and the representatives and agents of the town as to the extent of the plaintiff's liability on each of the bonds, and in compromise and settlement of said controversies the plaintiff gave his promissory note, dated July 24, 1895, to one Aldrich, who had been chosen an agent of the town in the controversies, payable in one year after date to said Aldrich or order, for the sum of $2,350,

with interest at five per cent per annum; that the plaintiff executed and delivered to Aldrich a mortgage deed, containing a power of sale in the usual form of nine different parcels of land, as security for the note and of even date therewith, and that Aldrich on the same day executed an instrument declaring that he held the note and mortgage in trust to pay the avails thereof to the town.

It appeared that Aldrich subsequently resigned his position as agent and trustee, and on June 19, 1896, the defendant Putnam was chosen in his place, and Aldrich transferred to Putnam the note and assigned to him the mortgage. Neither the principal of the note nor the interest were paid at maturity, nor have they since been paid.

The defendant as assignee of the mortgage deed, and by virtue of the power of sale therein, advertised the lands described therein for sale, by public auction, on October 14, 1896, and on that day adjourned the sale to October 28, 1896.

The inhabitants of the town of Deerfield, on October 10, 1896, at a town meeting, under a proper article in the warrant, voted to release the plaintiff from the note and mortgage, and also voted at the same meeting that the defendant Putnam be directed to cancel all obligations given by the plaintiff in favor of the town in the Stebbins matter, which might appear on record in the registry of deeds, and also to surrender to the plaintiff the note and mortgage given by him to secure the payment to the town of $2,350, under date of July 24, 1895. At another town meeting, held on October 23, 1896, and under a proper article in the warrant, the town voted not to rescind its action at the meeting of October 10, 1896, releasing the plaintiff from his obligation to the town.

The plaintiff after each of the town meetings demanded of Putnam the note and he refused to surrender or cancel it, and Putnam has not released, cancelled, or discharged the mortgage. A large number of the taxable voters present at each of said town meetings voted against the proposition to release the plaintiff from his obligation to the town. The defendant Putnam, in his answer, alleged that he intended to disregard the votes of the town by reason that large numbers of the taxable inhabitants voted against the proposition to release the plaintiff from his obligation, and by reason that said votes were passed

without authority of law, and the attempt to release the plaintiff from his obligation was *ultra vires* and void.

The judge reserved the case for the consideration of the full court, such decree to be entered as law and justice might require.

*J. A. Aiken*, for the plaintiff.

*P. D. Martin*, (*C. F. A. Eddy* with him,) for the defendant Putnam.

HOLMES, J. There is no doubt that a town may release a part of a debt by way of compromise. *Matthews* v. *Westborough*, 131 Mass. 521, and 134 Mass. 555. *Prout* v. *Pittsfield Fire District*, 154 Mass. 450. *Agnew* v. *Brall*, 124 Ill. 312. We assume that it might release the whole upon considerations of paramount convenience and indirect pecuniary advantage, as to qualify a witness. *Ford* v. *Clough*, 8 Greenl. 334, 344. It may be, very likely, that it can do so on vaguer grounds of convenience or justice. See *Friend* v. *Gilbert*, 108 Mass. 408. But it cannot release an admitted debt against the dissent of a minority by way of a mere gift. See *Mead* v. *Acton*, 139 Mass. 341; *Agnew* v. *Brall*, 124 Ill. 312, 315.

Whether in the present case the vote to release the plaintiff's note and mortgage was more than a simple gratuity is a question to be determined from the history and circumstances of the case, and from the conduct of the plaintiff and of the town. *Matthews* v. *Westborough*, 131 Mass. 521, and 134 Mass. 555. The fact that the note was given by way of compromise of a larger claim looks as if the liability was undisputed, and the town vote a gratuitous benevolence. This impression perhaps might be strengthened if it be true, as stated at the argument, that the town had confirmed the compromise effected by its agent, and thus impliedly had adopted the view that the claim was just. But it is obvious that the fact ought to be found by the judge who tried the case and heard all the evidence. If we should pass upon the report as it now stands, we should have to act on imperfect indications or artificial presumptions, instead of a living belief such as the evidence naturally would produce. The report must be discharged, but perhaps the opinion which we have expressed upon the substantive question of the case will be sufficient to prevent the necessity of bringing it here again.

*Report discharged.*