Case 22.—ACTION BY A. RONSH AND OTHERS AGAINST THE VANCEBURG, SALT LICK, TOLESBORO & MAYSVILLE TURNPIKE CO., &c., TO ENFORCE THE PAYMENT OF CERTAIN BONDS.—March 17.

## Ronsh v. Vanceburg, Salt Lick, Tolesboro & Maysville Turnpike Company, &c.

120  165
f131  868

Appeal from Lewis Circuit Court.

JAMES P. HARBESON, Circuit Judge.

From a judgment of dismissal plaintiffs appeal.

Reversed as to the Turnpike Co., and affirmed as to the other defendants.

Turnpike Bonds—Bonds for Building—Sale of Road to County— Action to Subject Road to Bonds—Limitation—Pleading— Valuable Consideration — Selling Franchise — Constitutional Prohibition—Insufficient Allegations.

1. Turnpike Roads—Bonds for Building—Sale of Road to County —Action to Subject Road to Bonds—Limitation—Where parties owning bonds issued by a turnpike company for its construction sued the turnpike company and the county, after a sale of the turnpike to the county under the free turnpike act March 17, 1896, asking to subject the road to the payment of such bonds, and more than five years after such sale and transfer filed an amended petition, alleging that the turnpike company, while indebted to plaintiffs and insolvent, without valuable consideration and with intent to defraud plaintiffs in the collection of their debt, conveyed to the county, by writing, all the property of the company, which the county

has received and has since used and operated, such amend-
ment was an abandonment of the original action, and sets
up a new action, which shows on its face that it is barred by
the five years' statute of limitation.

2. Pleading—Valuable Consideration—An allegation in a petition
that a conveyance was made without a valuable consideration
states merely the pleaders conclusion of the law, and is bad
on demurrer.

3. Selling Franchise—Constitutional Prohibition—A sale of a turn-
pike road made under the free turnpike act of March 17, 1896,
where a majority of the voters and taxpayers have voted in
favor of such sale, is not in violation of Kentucky Constitution,
section 203, prohibiting a corporation from selling or leasing
its franchise so as to relieve the franchise or property held
thereunder from corporate debts.

4. Insufficient Allegations—The petition, as amended, Laving failed
to show any bad faith in the turnpike company in disposing
of the proceeds of the sale of the road to the county, or that
the county had not, in good faith, paid full value for it, or
that the consideration paid is not yet on hand, available for the
payment of its debts, or that the proceeding by which the
county acquired it were not in conformity to the statute, no
cause of action was stated against the county, and the lower
court properly sustained the demurrer of the county and dis-
missed it from the case, but it was error to dismiss the
petition as against the turnpike company.

A. E. COLE & SON for appellants.

1. Judgment should not have been set aside:
First. Our first contention is that the county of Lewis, being a
quasi public corporation, was not entitled under the circumstances
of the case to have the judgment set aside.   (Davis v. Steuben
School Tp., 19 Ind. App., 694.)
Second. That it was an abuse of discretion for the court to
exercise its power to enable either Lewis county or the Turnpike
Company to take advantage of their own negligence in failing at the
proper time to offer a defense, if any there was, to the action.
Third. That the corporation, certainly as to antecedent debts
and creditors not having been dissolved by the alleged transfer,
the regularly elected president, B. C. Willim, was the proper party
upon whom to serve summons, and, therefore, no irregularity
existed as a basis to sustain said motion.
2. The judgment of 1883 is a contract containing mutual
promises, and prevents the running of the statute of limitation.
3. Transfer to Fiscal Court Fraudulent and Void as to appellants
—Having shown that the appellants had a good cause of action

Ronsh v. Vanceburg, S. L., T. & M. Turnpike Company, &c.

and were creditors of appellee, Turnpike Company, before its alleged transfer to the fiscal court of Lewis county, our third contention is that said transfer was, as to appellants, fraudulent and in violation both of secs. 1906 and 1907b, Ky. Stats., and sec. 203, Ky. Constitution.

4. Demurrer to Answer of Turnpike Company—Since the promise made before the period of limitation had expired on the bonds set forth in the petition, the effect of which promise was, at least, to exclude from the period of limitation the time that had elapsed when the promise was made, if not to merge the debt, the answer did not avoid the effect of these allegations, and was, therefore, insufficient. Hence the demurrer thereto should have been sustained. (Prichford v. Gatewood, 10 Ky. Law Rep., 112; 2 Mar., 564; 2 Ch. Pl., 481, note U.)

5. Motion to Transfer—If, as in the case at bar, the equitable issues depend on the result of the legal issue then the latter should be transferred, on motion, to the ordinary docket to be first tried by a jury. Hence the motion to transfer should have been sustained. (Hill v. Phillips' Adm'r, 10 Ky. Law Rep., 31.)

6. Estoppel—Appellee corporation can not contradict the terms of said judgment of the Lewis Circuit Court, and, therefore, is estopped to deny its promise therein, which prevents the statute of limitation from running against the debt of appellants.

7. Res Adjudicata—Since this precise question was before this court on a former appeal, when it was held that the judgment in question is a promise to pay the debt, by reason whereof a remedy was then denied appellants therein, that decision is the law of this case, and appellee is thereby precluded from asserting the contrary. Hence the demurrer of appellee should have been overruled. (Hopkins v. Adams Roth Grocery Co., 105 Ky., 357.)

8. Receiver—The court should not have refused the motion of appellants for a receiver, which was supported by an uncontradicted affidavit, and the admitted allegations in the pleadings showing their right thereto. (Civil Code, sec. 298.)

9. Personal Judgment Against Fraudulent Donee—Where, as in this case, the fraudulent donee, Lewis county, has taken down the toll-gates, and, in obedience to the mob spirit, destroyed the property, a decree should be rendered, charging it personally with the value of the property at least to the extent of the debt, interest and costs of appellants. (Halbert v. Grant, 4 T. B. Mon., 580; Coffey v. Norwood, 81 Ala., 512.)

## AUTHORITIES CITED.

Davis v. Steuben School Tp., 19 Ind. App., 694; Cornell University v. Parkinson, 59 Kan., 365; Constitution, sec. 203; Mumma

v. Potomac Co., 8 Pet., 281; Smith v. Canal Co., 14 Pet., 45; High-
tower v. Thornton, 8 Ga., 486; Pritchford v. Gatewood, 10 Ky. Law
Rep., 112; 2 Mar., 504; 2 Ch. Pl., 481, note U; Hill v. Phillips' Adm'r,
10 Ky. Law Rep., 31; Paul v. Smith, 82 Ky., 451; Stevenson· v.
Flournoy, 89 Ky., 561; Brandenburgh v. Three Forks Deposit Bank,
45 S. W., 108; Ratcliff v. Bellfort Iron Works, 87 Ky., 559; Hopkins
v. Adams Roth Grocery Co., 105 Ky., 357; Civil Code, sec. 298;
Halbert v. Grant, 4 T. B. Mon., 580; Coffey v. Norwood, 81 Ala,
512; Board of Int. Imp. Shelby Co. v. Scearce, 2 Duv., 577.

E. L. WORTHINGTON for appellee.


POINTS AND AUTHORITIES.

1. Sec. 203 of the Constitution does not give a lien on a turn-
pike road transferred to a county under the free turnpike act for
a debt of the turnpike incurred in the construction of the road.
(Bailey v. Southern Ry. Co., 22 Ky. Law Rep., 1397.)

2. A new promise or acknowledgment to suspend the statute of
limitations must be a promise to pay, or an acknowledgment of,
the particular debt in question. A statement by a debtor that he
will pay "all his debts" does not suspend the statute as to any
of them. (19 Am. & Eng. Ency. of Law (2d Ed.), 293 and 302;
Buswell on Limitations, secs. 45 & 47; Wood on Limitations (3d
Ed.), p. 182; Christy v. Flemington, 49 Am. Dec., 590; Hidden v.
Cousins, 60 Am. Dec., 93.)

3. A creditor who attacks a conveyance by his debtor, on the
ground of fraud, more than five years after it was made, must
allege that he discovered the fraud within five years, and that he
could not by reasonable diligence have discovered it sooner.
(Brown v. Brown, 91 Ky., 639; Cavanaugh v. Britt, 90 Ky., 273.)

W. C. HALBERT for appellee.


POINTS AND AUTHORITIES.

1. A creditor of a corporation has no lien on the property of
the corporation and it has the same right and power to sell and
convey its property as a private individual. (Hollins v. Brierfield
Coal & Coke Co., 150 U. S. Rep., 373, 37 L. C. P. Co., 1113; Louisville
Banking Co. v. Etheridge Mfg. Co.'s Ass'ee, &c., 19 Ky. Law Rep.,
908; Chesapeake, Ohio & Southwestern Railroad Co. v. Griest, 85
·Ky., 619; First National Bank v. Dovetail Body & Gear Co., 143
Ind., 550, 52 Am. St. Rep., 435; 2 Morawetz on Cor., sec. 782; 3
Clark & Marshall on Cor., p. 2324; 7 Am. and Eng. Ency. of Law
(2d Ed.), 734.)

2. Sec. 203 of the Constitution does not create or give a lien
on a turnpike for debts incurred by it in the construction of its
road. (Bailey v. Southern Ry. Co., 22 Ky. Law Rep., 1397; McChes-

ney v. Hyde Park, 151 Ill., 647; 2 Bouvier's Law Dic. (Ed. 1897), 550; Universal Dic. of the Eng. Lang. vol. 3, 3370.)

3. The circuit court has a reasonable and sound discretion in the matter of filing amended pleadings after the regular term prescribed for filing them, and did not abuse its discretion in this action, and this court will not reverse for an error in this respect except when the lower court, in our opinion, abused a reasonable and sound discretion. (Donnelly v. Pepper, 13 Ky. Law Rep., 82; Newton v. Long, 13 Ky. Law Rep., 698; Williams v. Cooper, 14 Ky. Law Rep., 284; Elizabethtown, Lexington & Big Sandy R. R. Co. v. The Catlettsburg Water Co., 22 Ky. Law Rep., 1632.)

4. The bonds sued on in this action were personal estate, and the right of action was alone in the personal representative of the intestate, John Ellison, if he died intestate, which is not alleged, and his widow and heirs had no right of action to sue or maintain. (Croswell's Executors, &c., p. 446; Rockford v. Rockford, &c., 12 Ky. Law Rep., 153; Munsell, Adm'r of A. Sneed v. Barlett, 6 J. J. Mar., 20; Boyd v. Jones, 8 Ky. Law Rep., 602; Swart v. Reveal, 16 Ky. Law Rep., 503.)

OPINION BY JUDGE O'REAR

This suit was filed in the Lewis Circuit Court on March 11, 1898, by appellants, who are the administrator and distributes of John Ellison, deceased, to enforce the payment of certain bonds issued about the year 1872 by the Vanceburg, Salt Lick, Tolesboro & Maysville Turnpike' Company. The turnpike company, Lewis county, and the Lewis county fiscal court were made defendants to the action. The suit was to subject the road to the payment of appellants' debt. The road having been acquired by Lewis county by virtue of the free turnpike act, it was sought by appellants to have a receiver take charge of the road, to collect tolls on it until enough was realized to pay their debt. The answer of the defendants relied, among other defenses, upon the statutes of limitation; both the 15-year statute and the 5-year statute being pleaded. The case went off on a demurrer to the petition, and to a reply to these pleas of limitation.

We are of opinion that the 15-year statute of limitation was saved by an order entered by an agreement, dated December 7, 1883, entered into between the turnpike company and the bondholders in a suit then pending in the Lewis Circuit Court, from which the running of the statute began anew, and, as 15 years had not elapsed before this suit, that statute is not applicable.

The plea of the 5-year statute of limitation applies to Lewis county and the fiscal court, and not to the turnpike company, and is based on this state of facts: The plaintiffs alleged that in January, 1897, in pursuance to the free turnpike act, the Lewis county fiscal court regularly accepted and received from the turnpike company its road, franchise, tollgates, etc., for the purpose of the road's being thereafter used as the property of the county, and free from any claim on the part of the turnpike company; that in pursuance of the transfer the pike is now operated by the county as a free turnpike; and that the county can not lawfully operate the road so as to produce any revenue whereby to pay the plaintiffs' debt. Appellants alleged in their petition that they had a lien on the property of the turnpike company, but no facts were stated sufficient to sustain this conclusion of law on the part of the pleader. On September 6, 1902, more than five years after the transfer of the road to the county, the plaintiffs tendered an amended petition, in which they alleged that the money sued for was furnished the corporation to enable it to construct, equip and repair its road, and operate it; that, while it was indebted to the plaintiffs and insolvent, the turnpike company, without valuable consideration, and with intent to hinder and defraud the plaintiffs in the collection of their debt, conveyed to Lewis county, by writing which had never

been recorded, all the property of the turnpike company, of every kind and description, which the county thereupon regularly received, and has since used and operated. The court allowed the amended petition to be filed as to the turnpike company, but refused to allow it to be filed as to Lewis county, and dismissed the petition as to both of the defendants. The petition, as originally drawn, was evidently intended to reach the turnpike in the hands of the county, and, when the court sustained the county's demurrer to the petition, the amendment referred to was tendered. This was after the lapse of five years from the time of the transfer. Appellees insist that it was too late for the plaintiffs to set up that the transfer was fraudulent.

The amended petition abandons the cause of action set up in the original petition, and proceeds upon an entirely distinct one: that is, the alleged fraudulent transfer of the turnpike company's property to the county. In this amendment it is alleged that the county acquired the turnpike in question "without valuable consideration." What the consideration was, is not stated. A valuable consideration might consist of anything of any value, and it may be the assumption of an obligation—the mere altering of the condition of the party to be affected. The statute against fraudulent conveyances does not require that the consideration to uphold the transaction against creditors must be adequate. It is merely that it shall be valuable. (Sec. 1906, Ky. St., 1903.) Its inadequacy, if it was shown to be inadequate, would only be evidence of notice to the purchaser of the fraudulent purposes of the debtor. What is a valuable consideration is a pure question of law. Therefore an allegation that a transfer was made without a valuable consideration states merely the pleader's conclusion

of the law, and is bad on demurrer. (Sec. 119, Civ. Code Prac.; Gregory v. McFarland, 1 Duv., 59; Coleman v. Harper, 1 A. K. Marsh., 602; Jasper v. Hamilton, 3 Dana, 283; Davis v. James' Ex'r, 4 J. J. Marsh., 9; Newman's Pleading & Practice, 261.)

Good pleading requires that appellant should have stated what the consideration was, and then the court could decide whether it was a valuable consideration in law. A traverse of the allegation as made will put no fact in issue. There is no fact stated, to be admitted or denied. It could not be the basis of a prosecution for false swearing if the pleading be verified, because it states only the pleader's opinion of a matter of law. The allegation that the conveyance was made to cheat, hinder or delay the creditors of the turnpike company does not aid the pleading, because, under the statute, such purpose of the debtor can not affect the title to the property in the hands of a holder for valuable consideration, unless the latter had notice of the fraud. That is not charged in this case. All the previous allegations of the petition and its various amendments admit the good faith of the transaction, but attack it on the ground of the lack of power of the turnpike company to make, and of the county to take, the conveyance of the road while its owner was indebted. The constitutionality of the free turnpike act was expressly attacked. Therefore, even if the amended petition, attempting to charge a fraudulent conveyance, had been sufficient in form, it showed on its face that the cause of action, if any, was barred by limitation when the amendment first setting up that cause was tendered, and the action of the court in refusing to permit it to be filed over the objection of the county can not be harmful error, if it was error.

The question might arise here, even if the allegations of the amendment were ordinarily sufficient,

whether a county, an integral part of the state government, can be made liable to a suit for tort, in the absence of a statutory provision making it so. But, passing that question, appellants contend that section 203 of the Constitution applies. That section prohibits a corporation from selling or leasing its franchise so as to relieve the franchise or property held thereunder from corporate debts. This does not mean, however, that a corporation may not voluntarily sell its property, so long as it remains a corporation, just like other persons are permitted to sell their property. We are of opinion that the facts do not bring the case within that section. Lewis county bought this road because it was compelled to. For the same reason, the turnpike company sold the road to the county. This was owing to the vote of the taxpayers of the county, held under the mandatory provisions of the free turnpike act. The only thing that was then left open to the parties, the turnpike company and the county, was the terms of the contract. The act of March 17, 1896, being section 4748b, and its subsecs., of Ky. St., 1903, called the ''Free Turnpike Act,'' provides for taking the sense of the voters and taxpayers of any county upon the question whether turnpike and gravel roads in that county should be free. It is a fact, of such general and common knowledge that the court takes judicial notice of it, that in many of the counties of this Commonwealth the most important of their highways were tollroads, built largely by private capital. The vote in Lewis county under this act was in favor of the free turnpike system.

Sec. 5 of the act provides: ''If it shall appear that a majority of all the votes cast for and against said proposition are in favor of said proposition, then the fiscal court may acquire by gift, lease, purchase or

contract, any or all of the turnpike roads, or parts of such as lie within the county, on the best terms consistent with public interest, in the discretion of said court." * * * By sec. 6 it is provided: "All turnpike and gravel roads thus acquired or constructed shall become public roads." Sec. 7 provides for the conveyance of the title of such roads as follows: "The directors of any turnpike or gravel road are hereby authorized and empowered, through their president, to convey to the fiscal court purchasing same the title to such road." * * * As to the effect of the sale of the road, or any part of it, sec. 8, complete, declares: "When the entire turnpike purchased by a fiscal court lies wholly within the county by which the same is purchased, the transfer of title shall be made as provided in section seven, and thereupon, the charter, franchises, and so forth, of any such turnpike or gravel road shall be at once dissolved and terminated, but when any portion of any turnpike, which shall lie in more than one county, is purchased as herein authorized, the title to such part so purchased shall be conveyed to the county purchasing it in the manner before recited, and such transfer shall in no wise affect the charter or privileges or franchises of any turnpike road company so selling such portion, as to the remainder of the turnpike of such company. But as to the part so sold the charter shall be and become terminated, and the company shall be at once released from any and all responsibility concerning such portion under its charter or the laws of the State." By sec. 12 of the act, if the owner of the road and the fiscal court are unable to agree upon the terms of acquiring that part of the road in that county, it is made the duty of the fiscal court to institute condemnation proceedings "to condemn the turnpike road desired to be obtained." The result of the condemnation is to

compel an involuntary sale of the road desired, with the same legal effect as to its title as if done voluntarily by the owner.

From this act it is seen that, upon a vote in favor of the proposition, the county is bound to acquire, and the road company is compelled to sell, the tollroad. It is in the exercise by the State of her right of eminent domain that she may and does thus acquire, through the agency of the several counties, the title to the highways within her borders, for the free travel of the public. Private rights are respected in the provision for making compensation to such private owners by agreement or by condemnation. In this case it appears that the directors of the road, a majority of the stockholders concurring, agreed with Lewis county upon the terms by which the road in that county was transferred to the county. Whether it was by sale, lease, gift or other contract, does not appear. Nor does it appear that the whole of the road owned by the corporation was within Lewis county. It merely charged by plaintiffs (appellants), who are general creditors, that they have an unsatisfied debt against the company, created about 30 years ago, and which the company is unable to pay unless it continues to operate the road indefinitely as a tollroad. It is not alleged, and it can not be assumed, that the consideration received by the road company from the county was not a fair, full equivalent of its value. The value of the road is nowhere stated. Nor is it alleged that such consideration is not on hand now in the treasury of the company, and available to be applied to the company's creditors upon a proper application. But that is not this proceeding. This is an attack upon the right of the county to acquire the road at all without paying appellant's debt of $3,000-odd in full. The purpose of the suit is to have the court appoint a receiver for the

road, and to operate it as a tollroad, till the debt is paid, in spite of the vote of the people of the county, and in spite of the legislative will expressed in the statute compelling all tollroads, upon such favorable vote, to be acquired by the counties, and made free for travel. The contention, followed to its logical conclusion, is that a tollroad indebted can not be sold to the counties for its real value, if that value is less than its debts. Even if it should be conceded that the entire road owned by this company lay in Lewis county, and was acquired by the fiscal court as a free turnpike road, then the effect, as expressly provided in section 8 of the act, supra, is to dissolve the corporation, as if its charter had been repealed by an act of the Legislature; leaving its assets to be distributed among those entitled thereto. That would not be "an alienation of its franchise" by the corporation. The section of the Constitution applies to all corporations. If a corporation in good faith undertakes to close up its affairs in contemplation of dissolution, and, to that end, sells all its property for fair value to innocent purchasers, manifestly it could not thereafter exercise its franchise to be a corporation.

It is well known that since 1896 nearly every tollroad in this State—at least, the great majority of them, representing in the aggregate an enormous value—has been acquired by the counties under the act of March, 1896, and previous special acts of same import. To now hold that every road so acquired, where it was indebted, was conveyed in violation of sec. 203 of the Constitution, might operate most disastrously, not only to the counties, but upon many innocent holders of securities and obligations of the counties executed in payment for such roads. For, if the sales were void, they were void in toto.

To sustain appellants' contention would be to hold

the free turnpike act (the act of March 17, 1896) to be unconstitutional, wherein it permits the counties to acquire these tollroads by gift or lease or purchase, without making all creditors of the turnpike companies parties to the condemnation proceedings. That is the exact contention made by appellants in the original petition. A construction that makes a statute unconstitutional is not to be favored when the act is susceptible of any other.

The petition, as amended, in this case, having failed to show any bad faith on the part of the turnpike company in disposing of the proceeds of the sale of the road to Lewis county; having failed to show that Lewis county has not, in perfect good faith, paid full value for it; having failed to show that the consideration received is not yet on hand in the company's treasury, and available to the payment of its debt; having failed to show that the proceedings by which the road was acquired were not in conformity to the statute— no cause of action was stated against the county in any event, the circuit court properly sustained the demurrers of the county and dismissed it from the case. But it was error to dismiss the petition against the turnpike company.

The judgment is affirmed as to Lewis county and the Lewis county fiscal court, and reversed as to the Vanceburg, Salt Lick, Tolesboro & Maysville Turnpike Company, and, as against the latter, the cause is remanded for further proceedings not inconsistent herewith.

Petition for rehearing by appellants overruled.