## Roush & Co. v. Vanceburg, etc. Turnpike Co.

(Decided January 22, 1913.)

## Appeal from Lewis Circuit Court.

1. Turnpike Companies—Stockholders May Surrender Turnpike to County—Surrender of by Conduct.—Under section 4302, Ky. St., the stockholders of a turnpike company may surrender a turnpike to the county by formal action in a stockholders' meeting, or they may surrender it by conduct by acquiescing for a number of years in the county's taking possession of the road and maintaining it.

2. Turnpike Companies—Surrender of Turnpike to County—When not Prejudicial to Creditor.—The surrender of the turnpike by the company to the county was not prejudicial to a creditor of a corporation when the road was of no value, and money had to be spent upon it in order to put it in condition for public travel.

ALLAN D. COLE, for appellant.

SAMUEL J. PUGH and W. C. THOROUGHMAN, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Affirming.

This suit was brought by appellants against the Vanceburg, Salt Lick, Tolesboro and Maysville Turnpike Road Company, alleging that they owned certain bonds issued by the Turnpike Company which were unpaid; that in the year 1897 in pursuance of the free turnpike act, Lewis county received from the Turnpike Company its turnpike for the purpose of its being used thereafter as a county road. The transfer was alleged to be invalid under section 203 of the Constitution. By an amended petition it was alleged that the transfer was fraudulent and void as to the creditors of the Turnpike Company. The defendants demurred to the petition; the demurrer was sustained and the petition dismissed. Appellants appealed to this court. On the appeal the judgment was affirmed as to Lewis county and reversed as to the Turnpike Company, the court holding

that the alleged transfer of the road by the Turnpike
Company to the county was valid under section 203 of
the Constitution; and that the amended petition charg-
ing that the transfer was fraudulent, did not state facts
sufficient to maintain the action as to the county. (Roush
v. Vanceburg, etc. Turnpike Co., 120 Ky., 165). On the
return of the case to the circuit court, a judgment was
entered in favor of the plaintiffs against the Turnpike
Company for their debt with interest and cost. Execu-
tion issued on the judgment and was returned no prop-
erty found. The plaintiffs then filed an amended peti-
tion in the same action against Lewis county setting
up the judgment and return of no property against the
Turnpike Company, and alleging in substance that the
Turnpike Company had not transferred all the turn-
pike to the county as had been by mistake alleged in the
original petition, but that it had transferred to the
county only one section of its tunrpike 14 miles long
and that the other section was still the property of the
Turnpike Company but in the possession of Lewis
county. Process was issued upon the amended petition;
the county's demurrer to it was overruled, and then an
amended petition was filed in which it was alleged that
the county had not paid anything or agreed to pay any-
thing for the section of the pike to which it obtained no
conveyance; that the Turnpike Company was insolvent
and had no means of paying the plaintiffs' debt. A
second amended petition was later filed in which it was
alleged that the first section of the pike was simply trans-
ferred to the county by a lease and that the county had
in fact acquired no title to it by condemnation proceed-
ings or otherwise. An answer was filed by the county
traversing the allegations of the amended petitions and
pleading limitation and alleging affirmatively how it
came in possession of the turnpike. Replies were filed
by the plaintiff controverting the affirmative allegations
of the answer; proof was taken and on final hearing
the circuit court dismissed the petition of the plaintiffs.
They appeal.

As was determined when the case was here on the
former appeal, the plaintiffs have no lien on the prop-
erty of the Turnpike Company. They are simply gen-
eral creditors. Section 4302 Ky. St. is as follows:

"The owners of the stock of any turnpike, plank,
gravel or other road may, at any time, surrender to the

fiscal court of the county in which the road is situated, the right to use, occupy, repair and control the same as a public road, and thereupon said court may immediately take charge of said road, which shall become a part of the public road system of the county."

On January 11, 1907, the fiscal court of Lewis county, by an order duly entered, accepted and received on behalf of the county, the first section of the turnpike, the stockholders and officers of the company having at a meeting duly held for the purpose, surrendered it to the fiscal court upon the sole condition that the court accept and receive the road and continue to use it as a county road for the use of the traveling public maintained by the county as a county road. When this surrender was made by the Turnpike Company, they had been unable for months to keep the road in condition for travel, or to maintain toll gates upon it; the property was of no value, and was voluntarily surrendered by the company to the county in order that the county might maintain the road in good order. At that time some of the stockholders objected to the other section of the road being surrendered to the county. The fiscal court on the same day made an order that being unable to enter into a contract with the owners for the acquisition of the second section of the road, the court ordered this fact to be certified to the Lewis county court, and that that court be requested to appoint three impartial housekeepers of the county to assess the value of the road and that the proper steps be taken to condemn it for the county. The county court made an order appointing three impartial housekeepers to assess the value of the property, and they filed a report, but at this stage of the proceedings the stockholders who had objected to the county taking over the property, ceased to make any further fight against it, and the county with the acquiescence of the company and its stockholders, took possession also of the second section of the road, just as it had of the other section. All this occurred in the year 1897. The county has since held and maintained the turnpike as a county road free for the use of all the citizens of the county and without objection by any officer or stockholder of the company. At the time the county took possession, the company was without means, the road was out of order, and the company had been unable for months either to put the road in order or to maintain gates upon

it. The property was of no value, and the course which things took was due to the fact that all the parties recognized that it was inevitable that the county must take the road and keep it up.

Under the statute the owners of the stock of any turnpike company may at any time surrender to the fiscal court of the county in which the road is situated, the right to use and control it as a public road; and thereupon it is the duty of the court immediately to take charge of the road; and the road becomes a part of the public road system of the county. What the stockholders of this Turnpike Company could do by direct action they could do by conduct. They by formal action surrendered one section of the road and the county accepted it. As to the other section they took no formal action but they acquiesced in the county's taking possession of the road in 1897, and have continued to acquiesce in it from that time to this. They are estopped to say they did not consent to the surrender of the road to the county; for, induced by their apparent consent, the county spent money on the road putting it in order, and has since maintained it. They could not stand by and see these things done, acquiescing in them when they were done, and afterwards maintain that they had not consented. But it is insisted for the appellants that while the stockholders may be estopped, they are not estopped to say that the road is still the property of the Turnpike Company. The title to the property was in the Turnpike Company and the control of the Turnpike Company was vested in the stockholders. They could dispose of their property under the statute, and appellants have no right to complain unless a fraud was committed on their rights. It is true a debtor may not give away his property to the prejudice of his creditors; but that this transfer was not fraudulent was the very question determined on the former appeal of this case on the facts then alleged. The transaction was had and appellees had notice of it more than five years before this proceeding was instituted and the right of action to attack it as fraudulent was barred by limitation. Besides the property being of no value, appellants were not prejudiced by the transaction. The road could not be maintained as a toll road unless it was put in order. This required money. The property in its condition at that time was a charge rather than an asset. The

county court by proper proceedings could have forfeited the franchises of the Turnpike company for failing to keep its road in order or it could have prosecuted to a final termination its condemnation suit; but it was unnecessary to do either of these things when the stockholders consented for the county to take charge and control of the turnpike as it was. Upon the whole record we conclude that no substantial rights of the appellant were prejudiced by the judgment.

Judgment affirmed.