Judge Ewing
delivered the Opinion of the Court.
On the 27th of February, 1831, Hamilton sold to Jasper, his right to a hundred and fifty acres of land on Pitman’s creek, at and for the consideration of two hundred and fifty dollars; of which one hundred dollars was paid down, and the note of Jasper given for the residue.
The land sold was embraced in a military survey of seven hundred acres, patented to Flowree; andj the right of Hamilton consisted in a written contract, which had been entered into between Trevis Grigsby, as one of the heirs of Flowree, and John Williams; by which Williams obtained, on lease, the whole survey of Flowree, with the privilege of making certain improvements upon it, for which he was to be compensated by the use of the land, or by Flowree’s heirs. Williams assigned this contract to Hamilton, and he took possession of the land. Hamilton had also a survey, on a Kentucky land office warrant, embracing the land sold, which was registered at the time the contract was made.
*281 The contract between Grigsby and Williams, and the assignment thereon, and the Register’s receipt for the warrant claim, were exhibited, on the contract between Jasper and Hamilton, and read and explained to Jasper by his friend whom he brought with him, and well understood. And with these evidences of Hamilton’s right, it was stipulated between them, as a part of the contract, that “Hamilton doth not agree to make any “ right or title, any more than to sign over an agree- “ ment from Grigsby, given to John Williams, for pay- “ ment of improvement on said land, and to assign a “ Treasury warrant which has been laid on said land. “ This is to be understood, that said Jasper takes the “ above mentioned land, with the above assignments, “ without any recourse on said Hamilton.”
Jasper was put into the immediate possession of the land, and remaining in the undisturbed possession, filed his bill, which was afterwards amended, enjoining the judgment recovered on the note for one hundred and fifty dollars, in the name of Wait, to whom it had been assigned, and praying a rescission of the contract, because of the total invalidity of Hamilton’s title, and because that, a spring, alleged to have been shown, as on the land sold, was not in fact on it, but embraced by a claim in the name of Welch.
Hamilton denies all fraud or misrepresentation, and every material allegation in the bill imputing fraud, relies upon his contract, as a contract merely for an assignment of his title papers, and right to possession, without any sort of responsibility on him for their goodness or validity;'and insists that the spring is on the land sold; and exhibited his title papers, ready to assign as the court might direct, having previously assigned the lease.
The Circuit Court dismissed the bill, with damages and costs, without prejudice to the complainants right to sue for the hundred and fifty acres claimed under the warrant, in case “Hamilton shall fail, in reasonable time “ after request, to make a quit claim deed for the same.” From this decree, the complainant has appealed to this Court.
ThecontraGt(s«pra) a chancing bargain— made with frank 'explanations on ■the part of the 'vendor, and imposing no responsibility, as So the title, upon .him.
Fraud will vlti'ate a chancing ■bargain as well ■as any other.
Where a vendor of land discloses his title and all facts known to him concerning it, and the purchaser takes it at his own risk, without recourse —expressions.of ■opinion by the vendor, during 'the negotiation, as to the goodness of his title, ■are no ground for ■aiescissien.
Tested by the written agreement, it is clear that Hamilton sold only his right, such as it was, without recourse or responsibility on himself. He stipulates only for the transfer of his title papers, and the surrender of bis right of possession merely, without any guarantee, for the goodness or validity of his title in any contingency whatever. It is evident, therefore, that the contract was altogether a chancing bargain. And whether the warrant was an appropriation of land or not, (conflicting as it did with a military claim,) or whether the lease conferred as extensive rights and privileges as Jasper expected, or not, the papers were exhibited, read and explained to him, by his friend; he had a full opportunity afforded him to investigate and understand them, and to make enquiry of others as to Hamilton’s rights; was warned at the time, that if he purchased, that he must do so at his own risk, and that Hamilton would not sell for less than -eight hundred •dollars, if his right was sure.
Under all those circumstances, he took the contract, better for worse, and must abide by it, unless there is some circumstance extraneous the contract, that wil-I invalidate it.
The complainant relies on thefraud of Hamilton, which is no doubt sufficient to justify the rescission of a' chancing bargain, as well as any other, if clearly made out.
The main ground of fraud relied on in this case, and that which is alone necessary to be noticed by this Court, is in relation to a durable spring, and which is perhaps the only durable spring on the land sold. The complainant, in his original bill, charges the defendant, Hamilton, with having shewn him said spring, as embraced in the boundary sold him--, when it was not. The próof is clear, that it is within the boundary of said warrant claim, and no fraud was consequently practised by Hamilton, in this representation.
In his first amended bill, he charges that Hamilton represented his claim under the warrant, as good; that his right to the spring was good, and that the spring and about an acre and a half of the land is covered by Welch’s military patent of one thousand acres, on which *283 Doganand Crain resides, which is paramount and superior to the claim of the Defendant.
A charge- in a> bill, that defendant “fraudulently misrepresented and concealed the nature; and goodnessiof the conflicting-, claims, and the condition of his. own claim,” is, too indefinite..
To justify the re cissionof a contract,. upon the ground of fraudulent misrepresentation or concealment, it must be shown, that the vendor stated. as trae, what he-knew was not so, or fraudulently concealed some, oneormore facts within hisknowledge.
*283 We cannot admit, that the expression of an opinion by the vendor, as to the goodness of his title, in the course of trade, when the vendee agrees to taire it, at his own risk, without recourse or responsibility on the vendor, is, such fraud as to justify a rescission of the contract,, if' the title should prove inferior to an adverse conflicting, claim. If all the facts in relation to his title are fairly and fully disclosed, the vendee is furnished with the.means to form his own opinion, or to obtain the opinion of others, and if he fails to do so, and purchases without recourse, it is his own folly, and "he has-no just ground to complain.
Whether a title is paramount and superior to an adverse conflicting claim, is a question of law,, often of the most abstruse and critical import, and which, the facts being fairly developed, is placed as much within the competency of the^endee to. solve, or to procure others to, do so, as within that of the vendor.
But this representation is denied by the answer, and. is proved only by one witness, without a single circumstance to sustain it.
The complainant, in his second amended bill, contents-himself with alleging, in general terms, “that the defendant. “ fraudulently misrepresented and concealed the nature “ and goodness of the conflicting claims, and the con- “ dition of his own claim..” This allegation is too general, and involves the same question, as, the one last disposed of — the opinion or judgment of the complainant, as to the nature or goodness of the adverse claims. In none of the bills is it alleged specifically, that the defendant knew of the confliction with Welch's claim, and fraudulently concealed.it from the complainant.
But waiving the question as to the'insufficiency of the allegations in the bills, and taking the case up upon the ground that a distinct charge had been made, that the defendant fraudulently represented to the complainant,, that Welch’s patent did not embrace said spring, or that he fraudulently concealed from him the fact, that it did, *284 and we are still satisfied that there is no just ground for a rescission of the contract.
A vendor represents that a spring is on the land he is selling; complainant charges that the spring is within the boundary of an adjoining tract, and so the representation is false and fraudulent; but it appears that, whether the spring is on the tract sold or not, will depend upon whether one or another of two points, shall be established as a corner of the adjoining tract — a debatable matter: defendant denying all fraud, and that he knew that the spring was on the adjoining tract, and no proof that he did, there can bo no rescission on that ground.
To constitute fraud, the vendor must know the fact which he represents, to be different from his representation. Or knowing the fact to exist, fraudulently, conceals it from the vendee.
In this, case, it is by no means clear, that Welch’s patent does embrace the spring, and if it were clear, the evidence is unsatisfactory to establish the fact, that Hamilton knew that it did embrace it.
The patent calls for — “Beginning at a white oak and “ two sugar trees, where stands a beech marked, N. W., “ standing on the east bank of the creek, and running “ thence down the creek, &c.” The white oak and two sugar trees, stand on the bank of the creek, about twenty or thirty feet above low water mark; the beech claimed to be the one called for, marked as a corner and with the letters N. W., stands about eight poles from the white oak and two sugar trees, higher up the creek. By running the calls of the patent from the beech, the spring will be included in Welch’s patent, and the first line running down the creek, will run into the creek, and at one point nearly across it — but at the end of the distance, will be on the same side. By running from the white oak and sugar tree, the spring will be excluded, and the first line will run a little off from the bank of the creek. The proof is by no means clear, that the beech claimed, is the beech called for in the patent. It has the marks on it called for in the patent. But there is no. evidence by any person who was present, or pretends to-know the fact, that they were made when the survey was originally run. Nor has it obtained the reputation in the neighborhood of being the beech intended; and its distance from the white oak and sugar tree, would seem to indicate that it was not. But if it were, it is still questionable whether it should be made the point of beginning, when the patent calls for, beginning at the white oak and two sugar trees. The call for a beech may have been used as a mean of directing to the white oak and two sugar trees, at which the survey is made to *285 begin. And this, we are disposed to' think, is the true construction of the call.
But if it be conceded that the beech, is the one intended, and is to be made the point of beginning, Hamilton denies that he knew that Welch’s patent embraced the spring, and the proof is not satisfactory to establish the fact, that he did know it, in contravention of his positive denial.
It is therefore decreed by this Court, that the decree of the Circuit Court be affirmed, with ten per cent, damages on the damages decreed by the Circuit Court.