AJAX FORGE CO. v. MORDEN FROG & CROSSING WORKS.

(Circuit Court, N. D. Illinois, E. D. October 24, 1907.)

No. 27,598.

1. PATENTS—INFRINGEMENT—SWITCH-ROD.

The Elfborg patents, No. 768,591 and No. 768,592, for switch-rod mechanism, construed, and, as limited by the language of their claims and by the prior art, *held* not infringed.

2. SAME—CONSTRUCTION OF CLAIMS.

Where a patentee limited his claims, by the use of the word "corrugated," to describe the form of a part, he cannot be heard to say that it should be given a broader construction, as "polygonal" or "noncircular," when there was pending in the Patent Office at the same time another application, with which he would have been thrown into interference if he had used the broader term.

Thomas F. Sheridan (Walter A. Scott and George L. Wilkinson, of counsel), for complainant.

Cheever & Cox, for defendant.

KOHLSAAT, Circuit Judge. This suit is brought to restrain infringement of claims 1 and 2 of letters patent No. 768,591 and all of the claims of letters patent No. 768,592; both patents being for switch-rod mechanism, granted to Henry G. Elfborg, August 30, 1904. Claims 1 and 2 of patent No. 768,591 are as follows:

"1. In an apparatus of the class described, the combination of a bracket and a switch-rod, one of such members having a perforation with corrugated walls, and a bolt extending through such bracket and switch-rod and provided with a neck portion in engagement with one of such members and having an eccentric portion in engagement with the other of such members one of such portions of the bolt having a corrugated periphery in engagement with the member having the corrugated perforation, substantially as described.

"2. In an apparatus of the class described, the combination of a bracket secured to a switch-rail, a switch-rod adapted to be secured to the other switch-rail, one of such members having a corrugated perforation, and a bolt extending through such bracket and switch-rod and provided with concentric and eccentric portions, one of which is corrugated and in engagement with the member having the corrugated perforation, substantially as described."

Claims 1 to 7, inclusive, of patent No. 768,592, are as follows:

"1. In an apparatus of the class described, the combination of a bracket and a switch-rod, one of such members having a perforation with corrugated walls, and a bolt extending through such bracket and switch-rod and provided with a corrugated neck portion in engagement with the member having the corrugated perforation, and an eccentric portion in engagement with the other member, substantially as described.

"2. In an apparatus of the class described, the combination of a bracket and a switch-rod, one of such members having a perforation with corrugated walls, and a bolt extending through such bracket and switch-rod and provided with a corrugated neck portion in engagement with the member having the corrugated perforation, such bolt having a substantially cylindrical eccentric portion in engagement with the other member, substantially as described.

"3. In an apparatus of the class described, the combination of a bracket secured to a switch-rail, a switch-rod adapted to be secured to the other switch-rail, one of such members having a perforation with corrugated walls, and a bolt extending through such bracket and switch-rod and provided with a corrugated neck portion and depending portion in engagement with the member having the corrugated perforation, such bolt having a substantially cylin-

drical eccentric portion in engagement with the other member, substantially as described.

"4. In an apparatus of the class described, the combination of a bracket secured to a switch-rail, a switch-rod adapted to be secured to the other switch-rail, one of such members having a perforation provided with corrugated walls, a bolt extending through such bracket and switch-rod and provided with a corrugated neck portion and a substantially cylindrical depending portion in alinement with the axial center of such neck portion both in engagement with the member having the corrugated perforations, such bolt having a substantially cylindrical eccentric portion in engagement with the other member, and means for holding such bolt in position, substantially as described.

"5. In an apparatus of the class described, the combination of a bracket secured to a switch-rail, a switch-rod adapted to be secured to the other switch-rail one of such members being provided with a substantially cylindrical perforation therethrough, and the other of such members being provided with an upper jaw having a perforation with corrugated walls and a lower jaw having a substantially cylindrical perforation in alinement with the axial center of the perforation in the upper jaw, and a bolt provided with a corrugated upper neck portion and a substantially cylindrical depending portion in engagement with such jaws and having a substantially cylindrical eccentric portion in engagement with the member which extends between the jaws, substantially as described.

"6. In an apparatus of the class described, the combination of a bracket secured to a switch rail and having one and provided with an upper jaw having a perforation with corrugated walls and a lower jaw having a perforation in alinement with the axial center of the perforation in the upper jaw, a switch-rod adapted to be secured to the other switch-rail slidably mounted between the jaws of the bracket member and provided with a substantially cylindrical perforation, and a bolt provided with an upper corrugated neck portion and a substantially cylindrical depending portion in engagement with the jaws of the bracket, and having a substantially cylindrical eccentric portion in engagement with the switch-rod, substantially as described.

"7. In an apparatus of the class described, the combination of a bracket secured to a switch-rail, a switch-rod adapted to be secured to the other switch-rail, one of such members having a substantially cylindrical perforation, and the other of such members being provided with an upper jaw having a perforation with corrugated walls and a lower jaw having a substantially cylindrical perforation in alinement with the axial center of the perforation in the upper jaw, a bolt provided with a corrugated upper neck portion in engagement with the corrugations of the upper jaw and having a substantially cylindrical depending portion in engagement with the lower jaw and having a substantially cylindrical eccentric portion in engagement with the member which extends between the jaws, and means for holding such bolt in position, substantially as described."

Defendant admits the manufacture and sale, subsequent to the issuance of complainant's patents in suit, of certain adjustable switch-rods, which are charged by complainant to infringe, but contends: (1) That Elfborg was not the first inventor of the subject-matter of the claims above quoted; and (2) that it has not infringed those claims.

The mechanism of the patents in suit relates to what are known as "point rails," or "split switches," which are the very common form of railroad track construction used wherever it is desirable to form a branch or switch, or to run two tracks into one. The two rails forming the switch terminate in points, and each point is adapted to fit closely against the rail on one side, while leaving a space for the passage of the wheel-flanges on the other. The rod connecting these two rails of the switch is called the switch-rod. It is found that the vibration caused by the passage of trains over the switch causes the switch-rails, by the constant rattling and rubbing, to lose their close contact with the rails, and frequent readjustment of the switch-rod is neces-

sary, so that the rails may fit snugly together. The purpose of the patented device in suit is to provide a safe and convenient means for relatively readjusting the position of these rails by lengthening and shortening the switch-rod. The necessity for some means of readjustment, of course, very early became apparent, and many methods have been suggested and used for this purpose. Screw adjustments of different kinds seems to have been first thought of, but these were soon found open to the objection that constant exposure to moisture corroded, rusted, and wore away the threads of the screws, weakening the rod, and thereby making this mode of adjustment very insecure and dangerous. A stronger and more durable switch-rod is disclosed in some of the later devices which use the principle of connecting the two principal parts of the switch-rod by passing through them a coupling-pin or bolt, having an eccentric portion (as a separate part or integral with the bolt) so arranged as to engage with one or the other of the members of the switch-rod, so that turning the bolt (or the eccentric portion, where that is separate) will cause the members of the adjusting device to slide upon each other, thus lengthening or shortening the rod. When the proper adjustment is obtained by this means, it is necessary that the eccentric be held firmly against rotation, and to accomplish this result by a device simple, strong, cheaply made, and easily manipulated, seems to have been the goal towards which inventors directed their efforts.

The adoption of the eccentric as a means for accomplishing this adjustment is old. The patent relates, specifically, to the means adopted to hold the parts in adjustment. This is accomplished by complainant's assignor by the sinuous or corrugated form of the periphery of the eccentric portion in one patent, and of the shaft or bolt head in the other. In the defendant's device, it is accomplished by the octagonal shape of the bolt or shaft head, which is sunk in the same manner as in complainant's device into the upper part of the switch-rod. The only material difference between the device of patent No. 768,592 of complainant and defendant's device is in the shape of the shaft-head, and complainant contends that, as the bolt-heads of both devices, although a little different in shape, perform exactly the same functions in the same manner, they are mechanical equivalents of each other. An examination of the claims charged to be infringed shows that the patentee has limited himself to the corrugated form of the periphery of the eccentric portion of the bolt in one patent, and in the bolt-head in the other. He has been careful to use the word "corrugated" in all of the claims in suit, and has made no attempt to claim any other form, though the record discloses that in his first model the form used was polygonal. Either the word "polygonal" or the word "noncircular" might have been used in the claims and specifications. As the patentee and his attorney had before them the polygonal form of this member, and yet did not claim it, the conclusion would seem irresistible that they did not desire to claim it, but wished to confine themselves exclusively to the corrugated form. At the time of the pendency of the applications of complainant's assignor, patent No. 679,153 had been granted to Lee & Moore, and there was in the Patent Office an application of Elliott, upon which patent No. 755,471 was afterwards granted. Both of these showed a polygonal form of bolt-head; that of Elliott being sunk into

one of the switch-rod members, being thus supported against rotation on all of its faces, while that of Lee & Moore patent shows only one face of the octagonal bolt-head resting against the luglike portion of the upper member. To make this member of the Lee & Moore patent so that the bolt-head would be partially or wholly sunk into it, or to adapt the lug to engage with more than one of the faces of the bolt-head, would not seem to constitute invention. With this application and prior patent before the examiner, both disclosing the polygonal form of bolt-head, performing the same functions as the sinusoidal or corrugated form of complainant's patent, it would seem clear that, unless complainant's patents had been limited to the corrugated form, an interference would have been declared. This was not done, and the only plausible inference is that the Patent Office granted the patents to Elfborg solely because they were so limited.

Complainant's attempt to anticipate the Elliott and Lee & Moore patents by the 1899 model of Elfborg and the evidence of invention at that time cannot affect the case, because that construction was abandoned. No application was made for a patent on that specific form of switch-rod mechanism. Indeed, Elfborg declined, upon being informed by his counsel that his prior patent No. 640,456 did not cover the device of his 1899 model, to make application for a patent therefor, but decided to apply for a patent on "a somewhat similar structure, but corrugated; that is, so as to remove the objections which are found in the hexagonal head and hole." If the patent can be sustained at all in view of the prior art, it must be by reason of the specific form claimed, and, this being so, it clearly follows that defendant does not infringe.

The bill is dismissed for want of equity.