## Shipp, for Use of Fayette County, et al. v. Rodes, et al.

(Decided February 22, 1927.)

### Appeal from Fayette Circuit Court.

1. Counties.—County fiscal court, acting in good faith, may compromise and settle claims against former sheriffs for commissions collected and retained without authority, pending taxpayer's suit to recover such commissions for county, particularly in view of Constitution, section 144, and Ky. Stats., sections 1834, 1840.

2. Counties.—Pending litigation to recover on claims that are unliquidated and uncertain in amount, such claims may be compromised by the state or any of its political subdivisions at any time before final judgment.

3. Counties.—In taxpayer's suit to recover for county commissions improperly retained by former county sheriffs where defendants by answer alleged a compromise and settlement of such claims with fiscal court, held reply alleging that public inspector's report showed defendants indebted to county in sum greater than amount of settlement, and that prior to attempted compromise offer was made to pay larger sum than that which was paid to fiscal court and that compromise agreements were made for purpose of aiding defendants and their sureties to conceal and evade their liability to county and to defeat administration of law, was sufficient pleading of lack of good faith of fiscal court.

N. B. HAYS for appellant.

HUNT, NORTHCUTT & BUSH, HUMPHREY, CRAWFORD & MIDDLETON and GEORGE C. WEBB for appellees.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

This case and the companion case of Shipp v. Bradley have been before this court on one question or another a number of times. (Shipp v. Rodes, 196 Ky. 523; Shipp v. Bradley, 210 Ky. 51; Shipp v. Stoll, 200 Ky. 646; Shipp v. Doak, 211 Ky. 737.)

The facts out of which this controversy grows in their various aspects are stated in the opinions referred to and will not be again stated in this opinion.

When this case was sent back to the circuit court and before a hearing in that court the fiscal court of Fayette county entered into a compromise agreement with Rodes and also with Bradley by the terms of which agreement the claims made against the said Rodes and Bradley were settled and compromised. These compromise agreements were filed in the proceedings in the circuit court and relied upon by Rodes and Bradley as a complete settlement and compromise of all matters and things between each of them and Fayette county. The question arose as to whether, under the circumstances and facts in this case, the fiscal court of Fayette county had the authority under the law to enter into the compromise agreements. It was insisted by the appellant, Paul E. Shipp, who brought the taxpayer's suits that the fiscal court of Fayette county had no such authority, and that the suits which he had instituted and prosecuted could not be compromised or settled by the fiscal court, as he alone was representing Fayette county in this litigation, and that he had the authority to manage and control the course of the litigation until it came to an end.

This court, in the case of Shipp v. Rodes, 196 Ky. 523, has held that Shipp had authority to maintain the taxpayer's suits, but we do not understand the opinion to hold that the fiscal court was forever ousted of its authority to exercise the corporate powers of Fayette county and we do not understand that opinion to hold that the power of the fiscal court so well defined, as it relates to matters such as are involved herein in the case of Commonwealth of Kentucky v. Tilton, 111 Ky. 341, and Williams v. Stallard, 185 Ky. 10, was modified or restricted.

The controlling question before the court at this time is whether the fiscal court, acting in good faith, had authority to make the compromise agreements which are relied upon as a complete accord and satisfaction of the claims in the tapayer's suits. If the fiscal court was ousted of its jurisdiction so far as these matters are concerned by the institution of the taxpayer's suits, and if these suits were subject only to the control of the taxpayer without the direction or guidance or interference of the fiscal court, then the compromise agreements were made without authority and are wholly void. There is

no middle ground. We must either hold that the corporate powers of the several counties of this state which are exercised by the fiscal courts may be completely destroyed by a taxpayer who sees proper to institute a suit which, in his judgment, ought to be instituted and which, in his judgment, the fiscal court has improperly refused to institute, or we must hold that the corporate powers of the several counties of the state cannot be so destroyed.

If it be assumed that the fiscal court of a county is sometimes derelict in its duty that only proves that it is made up of fallible human beings, and if, by reason of such dereliction, some officious taxpayer desires to assume the duty of exercising the corporate powers of a county he may walk in and do so without let or hindrance, if we are to hold that the fiscal court may destroy its right to act concerning a particular matter because it did not act at the time some taxpayer thought it should act. If the fiscal court may be thus ousted of its jurisdiction the corporate powers of a county may be easily destroyed, and when the corporate powers of a county are destroyed then we can have no responsible head to the fiscal affairs of the county and chaos would be the result. However, these questions are determinable from the law as we find it written in our statutes and the decisions of our courts construing the statutes. So far as this court is concerned this question is one of first impressions. It has not heretofore been considered by the court. It is necessary, therefore, to consider the statutes conferring power upon the fiscal courts, and as the statutes are not numerous the task is not difficult.

The fiscal court is a constitutional court provided for by section 144 of the Constitution of our state. It consists of the judge of the county court and the justice of the peace unless steps have been adopted for the court to consist of three commissioners elected by the voters from the county at large and the judge of the county court. The duties and powers of the fiscal court are not defined by the Constitution. Therefore it was left to the legislature to prescribe its powers and duties.

Section 1834, Kentucky Statutes, is as follows:

"Unless otherwise provided by law, the corporate powers of the several counties of this state shall be exercised by the fiscal courts thereof respectively."

Section 1840, Kentucky Statutes, is as follows:

"The fiscal court shall have jurisdiction to appropriate county funds authorized by law to be appropriated; to erect and keep in repair necessary public buildings, secure a sufficient jail and a comfortable and convenient place for holding court at the county seat; to erect and keep in repair bridges and other structures and superintend the same; to regulate and control the fiscal affairs and property of the county; to make provision for the maintenance of the poor and provide a poorhouse and farm and provide for the care, treatment and maintenance of the sick and poor, and provide a hospital for said purpose, or contract with any hospital in the county to do so, and provide for the good condition of the highways in the county, and to appropriate county funds to make provision to secure immigration into the county, and to advertise the resources of the county, and to appropriate county funds for the benefit of colleges and for infirmaries for the sick located in the county, and to execute all of its orders consistent with the law and within its jurisdiction, and shall have jurisdiction of all such other matters relating to the levying of taxes as is by any special act now conferred on the county court of levy and claims."

The first of the above quoted sections provides that the corporate powers of the several counties of the state shall be exercised by the fiscal court. The second section quoted defines generally the powers and jurisdiction of the fiscal court. Among these powers is that "to regulate and control the fiscal affairs and property of the county."

In the case of Commonwealth v. Tilton, *supra*, the court, after quoting section 1834, Ky. Stats., and referring to section 1840, said:

"We are of opinion that by these two sections of the statute all rights of action for and on behalf of the county is in the fiscal court; and that until that court refuses to institute suit no one may do so."

It would be a peculiar situation if all right of action for and on behalf of the county is in the fiscal court and yet the fiscal court has not the power to enter into a

settlement in good faith of a matter involving the fiscal affairs of the county. As we understand this record, the fiscal court of Fayette county never at any time refused to institute a suit on the claims set up in the taxpayer's suits, but this court held that the circumstances were such that a refusal on the part of the fiscal court to institute the suit was not necessary before the taxpayer might proceed, but the fact remains nevertheless that the fiscal court did not refuse to institute a suit on these claims, and that cannot be charged against the court in a consideration of the question as to whether it has been ousted of its legal functions by reason of its conduct in connection with this litigation.

In the case of Henderson County v. Henderson Bridge Co., 116 Ky. 164, the court had occasion to discuss the question as to whether a judgment against the sheriff enjoining him from the collection of taxes was a bar to a suit by the county to recover the same taxes. Judge Hobson, writing for the court, said:

"Thus in Lyman v. Faris, 53 Iowa 498, 5 N. W. 621, the validity of a tax having been determined in an action against the board of supervisors, who were the managing agents of the county, it was held that an action to enjoin the collection of the tax could not be maintained by a taxpayer, as the supervisors represented all the taxpayers of the county in the defense which they had made to the former action on the same ground."

If the board of supervisors acting as managing agents for a county had entered into litigation wherein the validity of a tax was determined their action was no stronger than that of a fiscal court compromising a claim against a county, and if a taxpayer could not attack a judgment obtained in a suit wherein the board of supervisors were parties we believe it affords reason why a taxpayer may not attack a compromise settlement made by the fiscal court in good faith. In the same opinion Judge Hobson, writing for the court, said:

"When the rights of the county are to be determined, it should be sued, so that it may control the defense, pay the expenses, and take such steps as its interest may require."

If the county should control the defense and take such steps as its interest may require then it must do

these things through the fiscal court under the provisions of section 1834, Ky. Stats., as only the fiscal court may exercise the corporate powers of the county, and if it applies to the defense of a suit it must apply with equal force to the prosecution of a suit by the county as plaintiff. When the rights of a county are to be determined in a suit brought in the interest of the county it must be brought in such a way that the county may control the prosecution and take such steps as its interests may require.

In the case of Williams v. Stallard, et al., 185 Ky. 10, this court said:

"This court has uniformly held in a long list of cases that sections 1834, 1839, 1840, and perhaps others, of the Kentucky Statutes, made and constituted the fiscal court the agency of the county to look after the arranging for and the collecting of the finances of the county as well as their disbursement for county purposes within the limitations prescribed by law, and those actions with others relating to the powers and duties of the county judges and the county attorney, have been construed to lodge with such officers and agencies the primary right to institute and conduct all suits and proceedings looking to the preservation of the fiscal affairs of the county."

Even if it has been held that the fiscal court of Fayette county was derelict in the discharge of its duties in the institution of suits on these claims, we are unwilling to say that the fiscal court lost its power to function again and to assume its rightful place in directing the financial affairs of the county, as long as it acted in good faith in matters pertaining to the litigation. We think it is clear that the fiscal court, acting in good faith, had the power and authority to enter into the compromise agreement settling the claims growing out of this litigation, and having this view of the law, the circuit court correctly held that the compromise might be relied upon as a bar to further proceedings in this matter on the part of the taxpayer.

We are supported in this conclusion by the decision in the case of Oakman v. City of Eveleth, 163 Minn. 100, 203 N. W. 514. The court in that case said:

"A petition, subscribed by the necessary number of electors in the city of Eveleth, proposed an

ordinance asking that the same be passed or submitted forthwith to a vote of the people. The proposed ordinance provided for a compromise of certain claims of the city against nine former city officials and their sureties. Such claims are now involved in three actions, brought by a taxpayer, for the benefit of the city, and are now pending in this court, and involve about $135,000.00. The ordinance is to authorize a full satisfaction and discharge upon payment of $15,000.00. The city council did not pass the ordinance. It did not submit it to a vote of the people, although 25 days elapsed.

"An alternative writ of mandamus was issued by the district court, upon relation of a taxpayer, requiring the council to proceed to call a special election for a vote of the people upon such ordinance, or show cause why they had not done so. Defendants demurred to the petition and writ on the ground that the facts therein stated did not constitute a cause of action. The trial court overruled the demurrer, but certified that the questions presented were important and doubtful. Defendants have appealed.

"1. Mandamus will not be granted where it would not avail anything. Dunnell's Digest, section 5759. It is said that this proposed ordinance is invalid, and that therefore the writ should not issue; and it is claimed that, if the ordinance is passed, it will bind the city only, and that by its terms its availability is optional to the defendants. We will assume that the petition is made in good faith and that the petitioners have sufficient reason to know that the settlement would be made if the city would join therein  At least, we cannot assume, on demurrer that the initiative movement is seeking a result that would be futile.

"2. The actions are being prosecuted by a taxpayer. The city failed to act. The appellant now questions the right of the city to step in and settle the matter involved in the taxpayer's lawsuits. The determination in such actions binds other taxpayers the same as it binds the plaintiff therein. Driscoll, et al. v. Board of Co. Com. (Minn.), 201 N. W. 945, filed January 23, 1925, and cases cited. No other taxpayer could interfere by commencing another suit in the same cause of action. Note 49 L. R. A. (N. S.) 108. Neither can the city come in and successfully

ask to have the action dismissed. State, ex rel. Morrison v. City of Muskogee, 70 Okl. 19, 172 P. 796. We think, however, that, where a city in good faith desires to compromise and settle pending litigation, and may do so, the paramount public welfare demands that such settlement may not be hindered or thwarted by a single taxpayer, even though he be courageous in the cause of public justice. The responsibility for action or nonaction in such matter must rest upon the public officials. If their action is not taken in good faith, the plaintiff will have a remedy.''

It is argued by counsel for appellant that the subject matter of these suits cannot be compromised, but we understand the rule to be well established that pending litigation to recover on claims that are unliquidated and uncertain in amount may be compromised by the state or any of its political subdivisions at any time before final judgment. Commonwealth v. Southern Pacific Co., 134 Ky. 421, 120 S. W. 313; Oakman v. City of Eveleth, 163 Minn. 100, 203 N W. 514; McQuillin on Municipal Corps., Vol. 5, section 2479; note 19 L. R. A. (N. S.) 320; Farnham v. City of Lincoln, 75 Neb. 502, 106 N. W. 666; Agnew v. Brall, 124 Ill. 312, 16 N. E. 230; Orleans County v. Bowen, 4 Lans. (N. Y.) 24; Mills County v. R. R., 47 Iowa 66, 107 U. S. 557, 2 S. Ct. 654, 27 L. ed. 578; Clough v. Varrette, 79 N. H. 356, 109 A. 78; Smith v. Wilkinsburg, 172 Pa. 121, 22 A. 371; City of San Antonio v. St. Ry. Co., 22 Tex. Civ. App. 148, 54 S. W. 281; Washburn County v. Thompson, 99 Wis. 585, 75 N. W. 309; People v. Board of Supervisors, 27 Cal. 655; New Orleans v. R. R. Co., 109 U. S. 221; 3 S. Ct. 144, 27 L. ed. 916; Hine v. Stephens, 33 Conn. 497, 89 Am. Dec. 217; Logansport v. Dykeman, 116 Ind. 15, 17 N. E. 587; McKennie v. Charlottsville, 110 Va. 70, 65 S. E. 503, 18 Ann. Cas. 1027; State v. Davis, 11 S. D. 111, 75 N. W. 897, 74 Am. St. Rep. 780; Petersburg v. Mappin, 14 Ill. 193, 56 Am. Dec. 501; Gering v. School Dist., 76 Neb. 219, 107 N. W. 250; R. R. Co. v. Anthony, 73 Mo. 431; Multnomah County v. Dekum, 51 Or. 83, 93 p. 821, 16 Ann. Cas. 933; Paret v. Bayonne, 39 N. J. Law, 559; Springfield v. Walker, 42 Ohio St. 543; Labette v. Elliott, 27 Kan. 606; Wells v. Putnam, 169 Mass. 226, 47 N. E. 1005; Buffalo v. Bettinger, 76 N. Y. 393; Dillon on Municipal Corps., section 821; Abbott on Municipal Corps., vol 2,

section 1160; Tiedman on Municipal Corps., section 142; Beach on Public Corps., vol. 1, section 638; 28 Cyc. 1756; Town of Russell v. Whitt, 161 Ky. 187, 170 S. W. 609; Creekmore v. Central Construction Co., 157 Ky. 336, 163 S. W. 194; Phillips' Admr. v. Phillips, 81 Ky. 147.

This brings us to the final question in the case and which is the only one left remaining. Appellant filed a reply to the answers setting up the compromise made between the fiscal court and Bradley and Rodes. The paragraph of the reply necessary for consideration attempts to set up lack of good faith on the part of the fiscal court in making the compromise agreements. If the fiscal court did not act in good faith and did not exercise a reasonable judgment in entering into the compromise agreements believing that it was acting for the best interest of the county, and if it could be shown that the fiscal court was guilty of fraud and that it did not act in good faith in the exercise of a reasonable judgment doing what it believed was for the best interest of the county, the compromise agreements would not be valid and might be attacked by the taxpayer. The taxpayer has the right to show, if he can, that the fiscal court did not act in good faith and that it acted in fraud on the rights of the county when it made the compromise agreements, and the question now before us is whether the allegations in his reply constitute any basis for his conclusion that the compromise agreements were fraudulently entered into for the purpose of shielding Rodes and Bradley and assisting them to defraud the county out of what justly belonged to it. We say if these things can be shown it follows as a matter of course that the compromise agreements were not entered into in good faith and would have no binding effect and the court should disregard them. We shall not set out in haec verba the paragraph of appellant's reply in which he attacks these compromise agreements. We will consider some of the language used. The language is from the reply in the Bradley case. He alleges that the compromise agreements were and are a scheme and a deliberate agreement made and entered into by said parties to impede the due and regular administration of justice in this case as directed in the opinions of the Court of Appeals. Such allegation is altogether too general and at the most is only a conclusion of the pleader, as is his allegation that it was a scheme to oust the courts of their jurisdiction of the case

and to shield Rodes and Bradley and their surety from having to answer and disclose the issues in controversy and account therefor. There are many conclusions in the pleading similar to those which we have mentioned, and in fact the pleading is very largely made up, so it seems to us, of allegations tending to show that the compromise agreements were entered into for the purpose of obstructing the course of justice. There is an allegation, however, that the public inspector's report of the record of Fayette county shows that the defendant, Rodes, and the surety company are indebted to the plaintiff and to Fayette county and her taxpayers in a large sum above what was paid in the compromise settlement, and there is a similar allegation relating to Bradley in his case. It may be that this allegation, although scant, is sufficient to entitle the plaintiff to prove, if he can, that there was an undisputed claim due Fayette county greater than $10,000.00 in each case, which sum was accepted in settlement of the litigation. If it could be shown that Bradley and Rodes were owing the county more than the amount which they paid and that the difference between what they were owing and what they paid as admittedly due by them, and that the fiscal court at the time it made the compromise knew that it was accepting a less sum than was admittedly due, it would tend to show a lack of good faith on the part of the fiscal court. It is also alleged that prior to the attempted compromise an offer was made to pay a larger sum than that which was paid to the fiscal court. There is no allegation that this offer was brought to the attention of the fiscal court, and yet it is evidence, if true, that Rodes and Bradley admitted that they were owing the county more than they paid it, and that might tend to show lack of good faith on the part of the fiscal court, although it could have little weight unless it should be shown that the fiscal court, at the time it made the settlement, knew that Rodes and Bradley were willing to pay more than was accepted by the court. It is further alleged that the compromise agreements were made for the purpose of aiding Bradley and Rodes and their sureties to conceal and evade their liability to Fayette county and her taxpayers and to defeat the due administration of the law. It can hardly be said that this allegation is merely a conclusion of the pleader. If Bradley and Rodes and the fiscal court sought by the settlement to conceal and evade the true liability of Rodes and Bradley to Fayette county, and if this fact

could be established by competent evidence, it would tend to show that the fiscal court did not act in good faith. The allegations in the reply in the Rodes case are more feeble than in the Bradley case, but in part they are substantially the same.

A majority of the court has reached the conclusion that the demurrer to the paragraph of the substituted replies in which the compromise agreements are attacked on the grounds of bad faith should have been overruled, but the court is not unmindful of the meagerness of the allegations in this paragraph of the replies. Nearly all of this paragraph of the replies is made up of conclusions which cannot be considered as constituting any defense to the compromise agreements, but, as indicated above, we have reached the conclusion that there is enough in the reply to entitle plaintiff to introduce proof to show, if he can, that the fiscal court did not act in good faith in the particulars referred to above where we have held that appellant scantily pleads enough to justify him in introducing proof. No other questions in this record are determined.

The judgment of the lower court is reversed, with directions for proceedings consistent with this opinion. Whole court sitting. Chief Justice Clay dissents from so much of the opinion as holds the replies attacking the settlement sufficient. Judge McCandless dissents from so much of the opinion as holds that the fiscal court had the authority to compromise the claims.

### Dissenting Opinion by Chief Justice Clay.

I concur in the conclusion of the court that the statutory powers of the fiscal court were not suspended by the bringing of this action, and that the fiscal court had the power to make the compromise, but am of the opinion that the demurrers to the replies attacking the compromise in both the Bradley and the Rodes cases were properly sustained. The question turns on whether the allegations of fraud or bad faith are sufficient. In order that there may be no misunderstanding of the language employed, I have deemed it best to set out at length the reply in the Bradley case. It is as follows:

"The plaintiff for further reply to the eighteenth paragraph and without waiving his motion to strike it from the files or his demurrer thereto, the plaintiff says that the alleged compromise and settlement

between the fiscal court, Thomas C. Bradley, the
National Surety Company and George R. Hunt, the
attorney of said Bradley, and said National Surety
Company and as set forth in the eighteenth para-
graph of the substituted answer of said Bradley was
and is a scheme and a deliberate agreement made
and entered into by said parties to impede the due
and regular administration of justice in this case as
directed in the opinion of the Court of Appeals; and
to oust the Fayette circuit court and the court of
Appeals of their jurisdiction of said case; and to
shield said Bradley and his surety, the National
Surety Company, from having to answer and dis-
close the excess in controversy and account therefor;
that said parties knew that the Court of Appeals had
said in two opinions said Bradley should settle and
account for the excess in controversy; that said
Court of Appeals had held that the said fiscal court
was incapacitated to act in this case for and on be-
half of Fayette county; and that a majority of the
members of said fiscal court were parties defendants
in this suit; that each of said parties after objecting
to the legal capacity of the plaintiff to institute and
prosecute this action, knew that the Court of Appeals
had overruled their objection and held in two
opinions that the plaintiff, Paul E. Shipp, possessed
the legal capacity and right to institute and prose-
cute this action against said Bradley and said
National Surety Company for and on behalf of him-
self, the other taxpayers of the county and the county
itself.  Plaintiff further states that said Bradley and
said National Surety Company by their said attor-
ney had entered into said compromise and settle-
ment of the claim of Fayette county and her tax-
payers against said Bradley and said surety com-
pany for the purpose of further obstructing the ad-
ministration of justice in said case got together and
attempted to compromise for $10,000.00; when the
public inspector's report and the records of Fayette
county show that the defendant, Bradley, and the
surety company are indebted to the plaintiff and to
Fayette county and her taxpayers in the sum of
$130,000.00, after deducting each year $5,000.00 as
compensation to said Bradley.  The plaintiff further
states that prior to the attempted compromise the
defendant Bradley by his attorney offered to com-

promise his indebtedness to the plaintiff to Fayette
county and her taxpayers for $20,000.00. Plaintiff
further says the majority of the members of said
fiscal court are parties defendants in this case and
were and are disqualified to act for or on behalf of
Fayette county herein for any purpose. With these
facts shown by the record the defendant, Thomas
C. Bradley, the National Surety Company, the fiscal
court and George R. Hunt, attorney for said Bradley
and said company, for ousting the Fayette circuit
court and the Court of Appeals and to prevent the
plaintiff from the further prosecution of this case
and for the purpose of aiding said Bradley and said
company to conceal and evade their liability to Fay-
ette county and her taxpayers and to defeat the due
administration of the law herein, made the alleged
compromise and settlement relied on as a bar herein.
Plaintiff further says that the said fiscal court was
and is without power, jurisdiction or authority to
compromise or settle said claim with said Bradley
and his said surety and the attempted settlement is
void; that the order of the fiscal court accepting the
proposition of said Bradley to pay said $10,000.00,
the order attempting to discharge said Bradley and
to release him from all or any liability to Fayette
county, her taxpayers and to this plaintiff are *ultra
vires* and void. Plaintiff further says the eighteenth
paragraph of the substituted answer of said Bradley
herein pleading the alleged settlement and compro-
mise with the fiscal court is a sham and frivolous
pleading made for the sole purpose of delaying and
to obstruct the due administration of law. The plain-
tiff for further reply to said eighteenth paragraph
says that the Court of Appeals in two opinions has
held that Fayette county and her taxpayers had the
right to recover said excess from said Bradley now
illegally retained by him; that said excess being not
only illegally retained but prohibited by section 246
of the Constitution and sections 1729 and 4168, Ken-
tucky Statutes, can not be the basis of a legal com-
promise or settlement for less than said excess; and
that after the right to said excess has been deter-
mined in two opinions of the Court of Appeals
neither the plaintiff nor the fiscal court has the right
or power to dismiss said action to the prejudice of
Fayette county or her taxpayers, and that said com-

promise and orders of the fiscal court attempting to dismiss this case are void."

In determining whether a pleading is sufficient it must be considered as a whole. Ross v. Columbus Mining Co., 204 Ky. 474, 264 S. W. 1071. Anyone who will take the trouble to read the whole of the foregoing paragraph will see that the purpose, and sole purpose, of the pleader was to allege that because of the steps taken in the action the members of the fiscal court were without power to make the compromise on the ground that it operated to impede the administration of justice by depriving the courts of jurisdiction to proceed with the case. In short, it is a combined plea of contempt of court and want of capacity on the part of the fiscal court to make the settlement. This is clearly shown by the concluding words, "neither the plaintiff nor the fiscal court has the right or power to dismiss said action to the prejudice of Fayette county or her taxpayers, and that said compromise and orders of the fiscal court attempting to dismiss this case are void." The claim that the compromise was a contempt of court was effectually disposed of in Shipp v. Doak, 211 Ky. 737, 277 S. W. 1020, and the further claim that the members of the fiscal court were without power to make the compromise because of the steps taken in the action has been adjudged without merit in the first part of the majority opinion.

But, even if we assume contrary to the law of good pleading that certain expressions may be separated from their context and construed for a purpose not intended, it remains to determine whether they are legally sufficient to sustain a charge of bad faith. There are certain principles of law concerning which the courts entertain a difference of opinion, but the rules applicable to this case have never been questioned by any court since the beginning of time. They are:

(1) Pleadings are construed most strongly against the pleader. Hughes v. Collins, 197 Ky. 589, 247 S. W. 737.

(2) Fraud is not presumed, but must be clearly alleged and proved. Indiana National Life Insurance Co. v. Maines, 191 Ky. 309, 230 S. W. 54.

(3) General averments of fraud are not sufficient, but the particular facts and circumstances constituting the fraud must be *clearly, concisely and specifically* set out. Jasper v. Hamilton, 3 Dana 280; Loesser v. Loesser,

81 Ky. 139; Phillips' Admr. v. Phillips, 81 Ky. 147; Machen v. Bernheim 93 S. W. 621, 29 Ky. Law Rep. 427; Star Milling Co. v. Board of Councilmen, 125 S. W. 1051; Cary v. Mire, 143 Ky. 63, 135 S. W. 403; Crider v. Sutherland, 186 Ky. 7, 216 S. W. 57; Creekmore v. Central Construction Co., 157 Ky. 336, 163 S. W. 194; Town of Russell v. Whitt, 161 Ky. 187, 170 S. W. 609; 9 Encyclopedia Pleading & Practice, 687, 16 Cyc. 231; Hays Creek Coal Co. v. Eagle Coal Co., 170 Ky. 323, 185 S. W. 1113; 27 C. J. 28; 12 R. C. L. 419.

The reason for the rule is twofold: (1) To enable the court to determine whether the facts relied on constitute fraud; (2) to apprise the opposite party of what he is called upon to answer.

With these principles in mind let us examine the allegations which the majority opinion holds are sufficient to make out a charge of fraud or bad faith. They are:

(1) "The parties to the compromise, for the purpose of further obstructing the administration of justice in said case got together and attempted to compromise for $10,000.00, when the public inspector's report and the records of Fayette county show that the defendant, Bradley, and the surety company are indebted to the plaintiff and to Fayette county and her taxpayers in the sum of $130,000.00, after deducting each year $5,000.00 as compensation to said Bradley."

(2) "Prior to the attempted compromise the defendant Bradley by his attorney offered to compromise his indebtedness to the plaintiff to Fayette county and her taxpayers for $20,000.00."

(3) "The alleged compromise . . . . was and is a scheme and a deliberate agreement made and entered into by said parties to impede the due and regular administration of justice in this case as directed in the opinion of the Court of Appeals; and to oust the Fayette circuit court and the Court of Appeals of their jurisdiction of said case; and to shield said Bradley and his surety, the National Surety Company, from having to answer and disclose the excess in controversy and account therefor."

(4) "The alleged compromise was made for (the purpose of) ousting the Fayette circuit court and the Court of Appeals and to prevent the plaintiff

from the further prosecution of this case and for the purpose of aiding said Bradley and said company to conceal and evade their liability to Fayette county and her taxpayers and .to defeat the due administration of the law herein.''

(1) Taking up allegation No. 1, it will be observed that it contains no averment that the members of the fiscal court knew or were ever informed of the existence of the report of the public inspector, whoever he may be, or of what it is alleged the records of Fayette county show. Nor are any facts alleged showing how or why the public inspector's report and other matters referred to happened to be of record, or that they were properly recorded. Therefore, no case of imputed notice is presented. But, aside from this, can a public record be pleaded by an allegation that it shows so and so? The question. is answered in City of Newport v. Lang, 155 Ky. 776, 160 S. W. 499, where we used the following language:

"Where the interpretation of public records is involved and their legal effect is to be adjudged, good pleading requires either that the records should be set forth at length in the body of the pleading, or that copies of them should be filed; otherwise, the courts will be left to the interpretation of such records which are contained in the conclusions reached by the pleader or his attorney."

If this be the rule as to an admitted public record, is it not all the more necessary to set forth the contents of other alleged records when there is nothing in the pleading to indicate that the matters recorded were properly of record, or were such as to charge the public with notice of their contents? It is apparent, therefore, that the allegation as to what the public inspector's report and the records of Fayette county showed, is but a conclusion of the pleader without facts to support it. But, even if we go further and admit the sufficiency of the allegation, surely the time has not come when fraud or bad faith may be predicated on a fact of which those charged with fraud or bad faith have no knowledge either actual or constructive. In dealing with the allegation in question the court said:

"It may be that this allegation, scant though it is, is sufficient to entitle the plaintiff to prove, if he

can, that there was an undisputed claim due Fayette county greater than $10,000.00 in each case, which sum was accepted in settlement of the litigation. If it could be shown that Bradley and Rodes were owing the county more than the amount which they paid and that the difference between what they were owing and what they paid was admittedly due by them, and the fiscal court at the time it made the compromise knew that it was accepting a less sum than was admittedly due, it would tend to show a lack of good faith on the part of the fiscal court."

Even if it be conceded that this is a correct proposition of law, it is not perceived how it has any application to this case. A careful scrutiny of the entire paragraph will disclose no fact from which it can be even remotely inferred that there was an undisputed claim due Fayette county greater than $10,000.00, or that the fiscal court knowingly settled for a less sum than Bradley admitted to be due.

(2) Respecting allegation No. 2, the court uses this language:

"There is no allegation that this offer was brought to the attention of the fiscal court and yet it is evidence, if true, that Rodes and Bradley admitted that they were owing the county more than they paid it and that might tend to show lack of good faith on the part of the fiscal court, although it could have little weight unless it should be shown that the fiscal court, at the time it made the settlement, knew that Rodes and Bradley were willing to pay more than was accepted by the court."

It must not be overlooked that we have not yet reached the proof, but are dealing with the question whether the pleading is sufficient to charge bad faith on the part of the fiscal court. A fact not alleged can not be proved, and surely we have not reached the point where the sufficiency of a pleading on demurrer may be bolstered up by evidence which the pleader will not be permitted to introduce. So far as I have been able to ascertain, this is the first time that it has ever been held that an offer to compromise at a certain sum was admissible for the purpose of showing liability to that amount. But, aside from this, as the alleged first offer of $20,-000.00 was not made to the fiscal court, but was made to

plaintiff, and there was no averment that the fiscal court knew of the offer, it necessarily follows that the allegation was wholly insufficient to charge the fiscal court with bad faith.

(3) Taking up allegations No. 3 and No. 4, it will be seen that the court concedes that allegation No. 3 is insufficient, but holds allegation No. 4 sufficient. Clearly, there is no difference between an allegation that the compromise "was a scheme to shield Bradley from having to disclose the excess and account therefor," and the allegation that the compromise was made "for the purpose of enabling Bradley to conceal and evade his liability." Therefore, allegation No. 4 is simply a restatement in different language of allegation No. 3, and, if one is insufficient, the other is insufficient. But I do not care to rest the case on what is conceded. If the allegations in question are not general averments, the word "general" has lost its meaning, and all the decisions of this and every other court in the land are incorrect. Neither allegation contains any facts or circumstances from which the court could determine that the compromise "was a scheme to shield Bradley from disclosing the excess," or "was made for the purpose of enabling him to conceal and evade his liability." Surely the allegation that the compromise "was a scheme to shield Bradley and his surety from having to disclose the excess in controversy and account therefor," or the allegation that the compromise was made "for the purpose of aiding said Bradley and said company to conceal and evade their liability to said Fayette county and her taxpayers," is no stronger than if the pleader had alleged that the compromise "was a scheme to defraud Fayette county and her taxpayers," or "was made for the purpose of defrauding Fayette county and her taxpayers," and we have uniformly held such allegations insufficient. Jasper v. Hamilton, *supra;* Loesser v. Loesser, *supra;* Machen v. Bernheim, *supra;* Star Milling Co. v. Board of Councilmen, *supra.* In the first mentioned case the allegation 'that the defendant fraudulently misrepresented and concealed the nature and goodness of the conflicting claims, and the condition of his own claim," was held too general, and therefore insufficient. In Loesser v. Loesser, appellant attacked a partnership settlement on the ground of fraud. He alleged in substance:

"That appellee failed to make the proper entries in the books of the sales made by him of the firm

property, and that, instead of a loss, they had made profits amounting to sixteen thousand dollars, to one-half of which the appellant was entitled; that he relied on the books and the honesty of his partner when he made the settlement and executed his receipt, but he was deceived by the representations made by his partner, and induced to execute the receipt by reason of his fraud; that the entries of sales and the proceeds of sales were made exclusively on the representations of his partner; that said representations were false and fraudulent; that their business house was in Owensboro, and the sales were made in Louisville, Carrollton, Cincinnati, New York, Philadelphia and other distant points, to parties with whom the transactions were had by appellee, and the latter rendered false accounts of sales, etc., making thereby false entries in the books of the firm, and imposing on appellant by his fraudulent conduct; that they kept limited and imperfect accounts at best, and the books, etc., of the firm had been mutilated, and the pages torn out by appellee, so as to make them unintelligible; that he had found among some waste papers thrown aside by appellee the memoranda of the settlement *showing* their purchases to have been about $170,000.00, and the amount of sales something less."

In an opinion by Judge Pryor the court held that the foregoing allegations, although much stronger than those involved in this case, amounted only to a general charge of fraud, and, no specific acts of fraud being alleged, the pleading was insufficient. In reaching this conclusion the court stated, in substance, that, if a partner attacking a settlement could rely on a general charge of fraud, it would necessitate an investigation by the chancellor of the entire partnership accounts, which he had no right to require. For the same reason the general charge that the compromise was made to conceal and evade liability, without any facts to sustain it, would require the court to investigate the entire transaction for the purpose of determining whether the compromise was made to conceal and evade liability.

Perhaps the best test for determining whether or not a pleading states facts or a mere conclusion is to ascertain whether a witness would be permitted to testify in the language of the allegation. Suppose a witness should

undertake to testify that the compromise "was a scheme to shield Bradley and his surety from having to answer and disclose the excess in controversy and account therefor," or that the compromise was made "for the purpose of aiding said Bradley and said company to conceal and evade their liability to Fayette county and her taxpayers," is there a court in any English speaking country that would not exclude the answer on the ground that it was a mere conclusion of the witness? And, if the answer is a conclusion of the witness, is not the same statement in a pleading a conclusion of the pleader?

The court characterizes the allegations in question as "meager" and "scant." This is an undeserved compliment. In law they amount to nothing. But even if worthy of being denominated "meager" and "scant," they can not be held sufficient without violating the rule that on demurrer a pleading is strictly construed against the pleader, Woodruff v. Shea, 152 Ky. 657, 153 S. W. 1005, and the further rule that the particular facts and circumstances constituting the fraud must be *clearly* alleged. 9 Encyclopedia of Pleading & Practice, 687.

In the companion case of Shipp v. Rodes, the allegations of the reply and amendments attacking the settlement are, if anything, more general and indefinite than those in the Bradley case, and need not be set out at length, nor separately discussed.

Being firmly of the opinion that, under the law as repeatedly announced by this court, the judge of the Fayette circuit court could not have reached any other conclusion than that the replies and amendments in each case were clearly insufficient to charge fraud or bad faith on the part of the fiscal court, I have felt impelled to dissent, and to express my views somewhat at length.

DISSENTING OPINION BY JUDGE McCANDLESS.

I concur in the conclusions reached, but cannot adopt the reasoning of the majority opinion, and in view of the importance of the matter involved, feel that I should give my reasons for dissenting.

This is a suit by a taxpayer of Fayette county to recover of the sheriff of that county and his bondsmen over $60,000.00, which it is alleged that officer collected and retained in commissions and fees in excess of constitutional limitations during the years 1914 to 1917 in-

clusive. In five years of litigation and by the prosecution of two successful appeals to this court the plaintiff has been adjudged the right to maintain the suit and to have stated a cause of action in his pleadings. See Shipp v. Rodes, 196 Ky. 523; Shipp v. Bradley, 210 Ky. 65, in which the matters in issue are fully set out. So far as the record shows during all of this period the fiscal court has been in apparent sympathy with the defendants and hostile to the enforcement of the claim.

Forced to an issue the defendants made a written proposition to the fiscal court to settle the claim by the payment of $10,000.00; the proposition was duly accepted by that body in an appropriate order, the money was paid and receipted; and among other defenses set out in the answer this settlement was pleaded in bar of the further prosecution of plaintiff's suit. Also, at the direction of the fiscal court, the county attorney filed a similar pleading for Fayette county and sought a dismissal of plaintiff's petition. Demurrers to these pleadings were overruled and appellant filed replies making a general allegation of fraud in the compromise agreement. Demurrers were sustained to these pleadings. No evidence was introduced on the other issues and the petition was dismissed.

The majority opinion holds that the plea of settlement was a complete bar to plaintiff's further prosecution of the suit unless attacked for fraud. I do not think this ruling tenable.

(1) On the authority of Com. v. Tilton, 111 Ky. 341; Lou. Car Wheel & Ry. Supply Co. v. City of Louisville, 146 Ky. 573; Ludlow v. City of Ludlow, 152 Ky. 545; Citizens' National Bank v. Com., 118 Ky. 51; Title Guaranty & Trust Co. v. Com., 146 Ky. 702; Hager, Auditor v. Shuck, 120 Ky. 574, it is strongly argued for appellant that the compromise settlement was an attempt to cancel a liability due the county and inhibited by section 52 of the state Constitution. Without reviewing those cases it may be said, as pointed out in the Louisville Home Tel. Co. case infra, that the liabilities attempted to be compromised or released therein were fixed demands, and therefore the release of any part of them was condemned. While not entirely free from doubt, it may be assumed from the record in this case that this claim is for an unliquidated and uncertain demand and does not fall within the constitutional inhibition. Com. v. Sou. Pac.

Ry. Co., 134 Ky. 421; Louisville Home Tel. Co. v. City of Louisville, 130 Ky. 611.

(2) The county is a *quasi* municipal corporation that can act only by agents. By section 144 of the Constitution and section 1840 of the statutes the fiscal court is empowered ''to regulate and control the fiscal affairs of the county.'' This power is not vested in any other person or body, and it, the fiscal court, is thus constituted the sole managing agent of the county's affairs, and, as such agent, it and it only, may as a general rule compromise and settle such claims due or owing by the county as are the proper subjects of compromise. No doubt it may do this at any time before judgment in a pending suit which is being prosecuted by its direction, and in so doing its members as public officers will be presumed to have discharged their duty, and the burden of proving the contrary is placed upon anyone attacking their action. The crucial question is whether it may thus compromise and dismiss a taxpayer's suit by settling the claim upon which it is based. In holding that it may do so the majority opinion seems to proceed on the theory that the taxpayer is merely a nominal plaintiff, and that the county is the real party in interest; that it has settled this claim by and through its regularly authorized governing body and that this settlement is conclusive unless attacked for fraud. But this premise is correct in part only. It is true that there are two classes of taxpayers' suits, (first) suits brought to prohibit anticipated illegal acts upon the part of the municipality in which preventive relief is sought. Such an action is brought by the taxpayer in his own name and he is admittedly the real party in interest. (Second). Action such as the one at bar to obtain relief against wrongful dealings with municipal property where the municipal officers, either actually or virtually, refuse to prosecute a suit. In such actions the final relief belongs to the corporation and not to the taxpayer, and is brought by the latter for the benefit of the municipality, which is said to be the real party in interest. Northern Trust Co. v. Snyder, 20 A. S. R. 872; Pomeroy's Equity Jurisprudence, secs. 1093-1094-1095. But it does not follow that the taxpayer is merely a nominal plaintiff and the fiscal court the real plaintiff, or that it has full power to act for plaintiff.

While broad powers are given this body, and its action is sometimes treated as the action of the county, after all it is but the agent of the county, and in the

exercise of such powers its actions are to be construed by the rules of law applicable to agency; and, as to the county itself and the taxpayers, it is regarded as a trustee and chargeable with the highest degree of diligence. So long as the fiscal court discharges its duty a taxpayer can do no more than criticise its actions. But if, through intention or neglect, it proves derelict to its trust and wrongfully diverts the public funds or permits such to be wrongfully diverted, and fails upon request to seek proper relief or is hostile thereto, the taxpayers who furnish the funds and who are interested in their disbursement and for whose benefit the funds are held in trust are not left without remedy. In such cases any one or more of these may sue for and on behalf of all persons similarly situated for the benefit of the county, and become *its representative in that suit,* and as the suit does not lie except when the fiscal court is derelict, the rightful institution of such suit—a matter heretofore judicially determined in this case, and confirmed by the substantial amount offered in compromise—is in itself an impeachment of that body, and the presumption in favor of public officers discharging their duty does not apply to its subsequent acts tending to end the prosecution of the suit, or to divest the taxpayer of his right to maintain and direct it.

True, if the fiscal court does not think the issues properly presented in such suit or wishes to recommend a settlement as the judgment of the court, or believes the suit is vexatiously prosecuted, it can intervene in the suit in the name of the county and aid the court in any way proper, or place the facts in their true light. Shipp v. Stoll, 200 Ky. 646. But, subject to such intervention, the rights heretofore adjudged appellant to maintain the action embraces the power to control and direct the suit to final judgment, and it is admitted that the fiscal court had no power to interfere in these matters or to dismiss the suit. State, Ex Rel. Morrison v. City of Muskogee, 70 Okla. 191.

It requires higher authority upon the part of an agent to compromise a suit than it does to prosecute it, and if by reason of its dereliction the power of a fiscal court is so abridged that it may not interfere with the management of a taxpayer's suit or dismiss it, it certainly does not possess the higher power of compromising and settling it. It is no longer the sole representative of the county in the matter, and if its subsequent con-

duct in relation thereto is inconsistent with the tax-
payer's claim, it should bear the burden of showing its
good faith, and that the rights sought in the petition are
fully protected in any proposition of settlement offered
by it, this to be determined by the court upon the issues
of law and fact, some support of this conclusion being
found in Bernheim v. Wallace, 186 Ky. 472; Com. v. Sou.
Pac. Ry. Co., 134 Ky. 421.

Of course this would not prevent the county from
accepting the fund paid in the proposed settlement and
the continuance of the suit at the cost of the taxpayer,
as in cases of private corporations, if it preferred to
adopt this course.  See 4th Thompson on Corporations
4571; 14 C. J. 390; 1st Daniel's Chancery Practice, page
794; Eagle Iron Co. v. Collier, 156 Fed. 594.

It is said by appellees, though not discussed in the
opinion, that the indirect interest of the taxpayer is in-
significant as compared with the county's interest, and
that he should not be permitted to stand in the way of the
duly constituted authorities in the conduct of the
county's affairs; but this argument ignores the fact that
the suit is for the benefit of all the taxpayers of the
county and that the aggregate of their indirect interests
equals the claim due the county for whom the taxpayer
has acquired the right to act.

True, the law favors compromises, and, under the
views expressed above, a compromise of such cases can-
not be made except with the approval of the court trying
the case.  But it cannot successfully be maintained that
an admittedly unfaithful trustee can compromise a suit
rightfully instituted by another for the benefit of the
*cestui qui trust,* and, as the sole fiscal agent and trustee
of the county has incapacitated itself to act in this mat-
ter, its members cannot complain that no compromise can
be had.

An additional reason for the above conclusion is that
the rule adopted in the majority opinion places a double
burden upon the plaintiff in the suit.  A still stronger
reason is that in making the *bona fides* of the fiscal court
the sole test of the validity of the compromise, and in
placing the burden of establishing the contrary on the
plaintiff, such settlement is practically made immune,
as fraud is elusive and hard to establish, and the rankest
compromise may be made in good faith.  Not only so,
but by this ruling the law is rendered inconsistent in
itself.  The taxpayer's right to institute and maintain

the action does not depend on fraud alone. True he may not institute such action in a matter upon which the fiscal court *has acted without* showing *mala fides.* But in a meritorious case, if that body fails or refuses to act after being requested to do so, he may sue for the county, although the fiscal court is acting *bona fide,* and its failure to act is occasioned solely by incompetency or inefficiency. In such a case the official incompetency would likely continue and by reason of it the court might be induced to accept in good faith a wholly inadequate settlement and one that might be so considered by the trial court upon the record before him. Yet, though the plaintiff in the suit is demanding a hearing on the merits, the judge must close his eyes to the record, accept the settlement as conclusive and deny plaintiff's prayer, because he is unable to charge *mala fides,* something that was not required in order to institute the action. This renders a taxpayer's suit a vain thing. It puts a trust fund in a court of equity under the control of the discredited trustee and ignores the rights and prayer of the *cestui qui trust.* It renders the law impotent in that it gives a right and offers a remedy but withholds its enforcement.

Oakman v. City of Eveleth, 203 N. W. 574, holds to the contrary, but the matters considered *supra* were not discussed in that opinion, which seems to have been based on the assumption that the taxpayer was trying to thwart a *bona fide* settlement, which I think an improper assumption.

Taxpayers' suits are the only protection afforded against inefficiency and wrongdoing upon the part of municipal fiscal officers. Public policy demands that the rights thus vouchsafed should be liberally construed and freely upheld by the courts, and not hampered by technical rules or strained constructions. Feeling that the majority opinion is not in accordance with this policy, I respectfully dissent.